**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X
: 
SECURITIES AND EXCHANGE COMMISSION, :
:
                Plaintiff, : **Filed Electronically**
:
                v. : **09 Civ. 6829 (JSR)**
:
BANK OF AMERICA CORPORATION, : **ANSWER**
:
                Defendant. :
:
:
---------------------------------------------------------------------- X

        Defendant Bank of America Corporation ("Bank of America") by and through its undersigned attorneys, Cleary Gottlieb Steen & Hamilton LLP, hereby answers the Complaint of Plaintiff Securities and Exchange Commission ("SEC") as follows:

        1.      No response to the allegations in paragraph 1 is required.

        2.      Bank of America admits that the transaction with Merrill Lynch & Co., Inc. ("Merrill Lynch") was negotiated over the weekend of September 13-14, 2008 and announced on September 15, 2008. Bank of America admits that the joint proxy statement (the "Proxy Statement") was filed with the SEC on November 3, 2008 and contained a summary of the Merger Agreement. Bank of America admits that the Merger Agreement was attached as an exhibit to the Proxy Statement. Bank of America refers to the Proxy Statement, the Merger Agreement, and the relevant portions of the Company Disclosure Schedule (the "Schedule") for a true and complete statement of their terms. Bank of America denies the remaining allegations contained in paragraph 2 and states that Bank of America and Merrill Lynch publicly disclosed, as part of the Proxy Statement and elsewhere, that Merrill Lynch was continuing to accrue compensation and benefits expenses in 2008 at a rate similar to 2007 and that numerous media

outlets, in newspapers, on television, and over the internet, reported that Merrill Lynch was expected to pay multi-billions of dollars in year-end incentive compensation for 2008.

       3.       Bank of America denies the fourth sentence of paragraph 3, except Bank of America admits that Merrill Lynch paid approximately $3.6 billion in aggregate value of both cash and stock for year-end incentive compensation for 2008 and that Merrill Lynch had a net loss for 2008 of approximately $27.6 billion and a net loss for 2007 of approximately $7.8 billion. The remaining allegations contained in paragraph 3 state legal conclusions to which Bank of America need not respond. To the extent any response to those allegations is necessary, Bank of America denies them.

       4.       The allegations in paragraph 4 state legal conclusions to which Bank of America need not respond. To the extent any response to those allegations is necessary, Bank of America denies them.

       5.       No response to the allegations in paragraph 5 is required.

       6.       Bank of America admits the allegations contained in paragraph 6.

       7.       Bank of America admits the allegations contained in paragraph 7.

       8.       Bank of America admits the allegations contained in paragraph 8.

       9.       Bank of America admits the allegations contained in paragraph 9, except the allegations stated in the first sentence of paragraph 9, as to which Bank of America lacks knowledge or information sufficient to form a belief as to the truth of when or under what circumstances senior management at Merrill Lynch began exploring the possibility of Merrill Lynch being acquired by a commercial bank.

       10.       Bank of America denies the allegations contained in paragraph 10, except Bank of America admits that the principal terms of the transaction were negotiated on September

13 and 14, 2008. Bank of America refers to the Merger Agreement and the relevant portions of the Schedule for a true and complete statement of their terms.

11. Bank of America denies the allegations contained in paragraph 11, except Bank of America admits that the proposed merger contemplated a transaction whereby Bank of America agreed to exchange 0.8595 shares of Bank of America stock for each Merrill Lynch share; that, based on the closing price of Bank of America common stock and the closing price of Merrill Lynch common stock on September 12, 2008, the implied value of one share of Merrill Lynch common stock on September 12, 2008 was $29.00 per share; that the two boards unanimously approved the transaction; and that the transaction was publicly announced on September 15, 2008. Bank of America lacks knowledge or information sufficient to form a belief as to the truth of whether the "agreement on Merrill's VICP [Variable Incentive Compensation Program] bonuses" was presented to the board of directors of Merrill Lynch.

12. Bank of America admits that counsel for Bank of America and Merrill Lynch reduced the terms of the Merger Agreement to writing and refers to the Merger Agreement and the relevant portions of the Schedule for a true and complete statement of their terms. Bank of America denies the remaining allegations contained in paragraph 12.

13. Bank of America denies the allegations contained in paragraph 13 and refers to the Merger Agreement and the relevant portions of the Schedule for a true and complete statement of their terms.

14. Bank of America admits the allegations contained in paragraph 14.

15. Bank of America refers to the Proxy Statement for a true and complete statement of its terms. Bank of America admits that the Schedule was not attached to the Proxy Statement. Bank of America denies the remaining allegations contained in paragraph 15 and

states that Bank of America and Merrill Lynch publicly disclosed, as part of the Proxy Statement and elsewhere, that Merrill Lynch was continuing to accrue compensation and benefits expenses in 2008 at a rate similar to 2007 and that numerous media outlets, in newspapers, on television, and over the internet, reported that Merrill Lynch was expected to pay multi-billions of dollars in year-end incentive compensation for 2008.

16.     Bank of America admits that the Schedule was not attached to the Proxy Statement.  Bank of America denies the remaining allegations contained in paragraph 16 and states that Bank of America and Merrill Lynch publicly disclosed, as part of the Proxy Statement and elsewhere, that Merrill Lynch was continuing to accrue compensation and benefits expenses in 2008 at a rate similar to 2007 and that numerous media outlets, in newspapers, on television, and over the internet, reported that Merrill Lynch was expected to pay multi-billions of dollars in year-end incentive compensation for 2008.

17.     Bank of America denies the allegations contained in paragraph 17 and refers to the Proxy Statement for a true and complete statement of its terms.

18.     Paragraph 18 states legal conclusions to which Bank of America need not respond.  To the extent any response to those allegations is necessary, Bank of America denies them.

19.     Bank of America denies the allegations contained in paragraph 19 and states that, from September through November 2008, Merrill Lynch's management prepared and considered a number of different possible schedules.  Bank of America lacks knowledge or information sufficient to form a belief as to the truth of when Merrill Lynch made final bonus decisions in prior years.

20. Bank of America denies the allegations contained in paragraph 20, except Bank of America admits that members of Merrill Lynch's Management Development and Compensation Committee were presented with a proposed schedule on November 11, 2008, and Bank of America refers to that proposed schedule for a true and complete statement of its terms. Bank of America states that it was not informed about that proposed schedule until after it had already been reviewed by Merrill Lynch's Management Development and Compensation Committee.

21. Bank of America admits that, during the merger negotiations, no agreement was reached with respect to bonuses for five of Merrill Lynch's top senior executives, that those executives did not receive year-end bonuses in 2007, and that Merrill Lynch had a net loss for 2007 of approximately $7.8 billion. Bank of America denies the remaining allegations contained in paragraph 21.

22. Bank of America denies the allegations contained in paragraph 22, except Bank of America admits that the size of the VICP pool proposed by Merrill Lynch's management decreased from October to December 2008 and that the Schedule called for a 60/40 cash-stock split for VICP payments, but Bank of America and Merrill Lynch ultimately agreed to a 70/30 cash-stock split for VICP payments.

23. Bank of America admits that the shareholder meetings for Bank of America and Merrill Lynch took place, as scheduled, on December 5, 2008 and that the shareholders of both firms voted to approve the proposed merger. Bank of America denies the remaining allegations contained in paragraph 23 and states that Bank of America and Merrill Lynch publicly disclosed, as part of the Proxy Statement and elsewhere, that Merrill Lynch was continuing to accrue compensation and benefits expenses in 2008 at a rate similar to 2007 and

that numerous media outlets, in newspapers, on television, and over the internet, reported that Merrill Lynch was expected to pay multi-billions of dollars in year-end incentive compensation for 2008.

24.     Bank of America admits the allegations contained in paragraph 24, except Bank of America lacks knowledge or information sufficient to form a belief as to the truth of whether all of Merrill Lynch's employees were notified of their 2008 VICP awards on December 19, 2008.

25.     Bank of America repeats and incorporates by reference herein its responses to paragraphs 1 through 24.

26.     Paragraph 26 states legal conclusions to which Bank of America need not respond.  To the extent any response to those allegations is necessary, Bank of America denies them.

27.     Paragraph 27 states legal conclusions to which Bank of America need not respond.  To the extent any response to those allegations is necessary, Bank of America denies them.

28.     Paragraph 28 states legal conclusions to which Bank of America need not respond.  To the extent any response to those allegations is necessary, Bank of America denies them.

## AFFIRMATIVE DEFENSES

Bank of America asserts the following affirmative defenses and reserves the right to amend this answer to assert any additional affirmative defenses when and if, in the course of its investigation, discovery, or preparation for trial it becomes appropriate to assert such affirmative defenses.  In asserting these defenses, Bank of America does not assume the burden of proof for any issue that would otherwise rest on the plaintiff.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Complaint fails because the Proxy Statement did not contain any statements that were false or misleading.

### Third Affirmative Defense

The Complaint fails because the Proxy Statement did not omit to state material facts necessary in order to make statements therein not false or misleading.

### Fourth Affirmative Defense

The Complaint fails because any alleged false or misleading statement or misleading omission was not material.

### Fifth Affirmative Defense

The Complaint fails because Bank of America was not negligent in the preparation of the Proxy Statement.

### Sixth Affirmative Defense

The Complaint fails because its allegations are barred by the doctrine of equitable estoppel.

WHEREFORE, Defendant Bank of America respectfully seeks an Order dismissing the Complaint and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 25, 2009

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By    /s/ Lewis J. Liman
    Lewis J. Liman, a Member of the Firm
    One Liberty Plaza
    New York, New York 10006
    (212) 225-2000

Attorneys for Defendant Bank of America Corporation