```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,      :
                                         :
               Plaintiff,                :     09 Civ. 6829 (JSR)
                                         :
          -v-                            :     OPINION AND ORDER
                                         :
BANK OF AMERICA CORPORATION              :
                                         :
               Defendant.                :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

      The principal charge in this case is that defendant Bank of America Corporation, in the proxy statement that solicited approval of the Bank's purchase of Merrill Lynch & Co. (the "Proxy Statement"), falsely represented that Merrill was prohibited from paying year-end bonuses without the Bank's (subsequent) consent, when in fact the Bank had already consented in writing to Merrill's paying up to $5.8 billion in such bonuses. See, e.g., Am. Compl. ¶ 18.  As part of its defense, the Bank contends that shareholders already knew, as a result of widespread media reports, that Merrill was expected to pay billions of dollars in year-end bonuses. See, e.g., Answer to Am. Compl. ¶¶ 2, 15, 16.

      However, the Proxy Statement itself, in its opening pages, expressly warns shareholders not to pay heed to such extrinsic information:

> You should rely only on the information contained or incorporated by reference into this document.  No one has been authorized to provide you with information that is different

from that contained in, or incorporated by reference into, this document.

Proxy Statement Cover Sheets.

At the end of the Proxy Statement, the same warning is repeated, and elaborated, in boldface:

> **You should rely only on the information contained or incorporated by reference in this document.  Neither Bank of America nor Merrill Lynch has authorized anyone to give any information or make any representation about the merger or our companies that is different from, or in addition to, that contained in this document.  Therefore, if anyone does give information of this sort, you should not rely on it.**

Proxy Statement at 124.

Accordingly, plaintiff Securities and Exchange Commission (the "S.E.C.") seeks to exclude the media reports from evidence.  The Bank counters that, even if the above-quoted warnings render such evidence irrelevant to the issue of shareholder reliance, such evidence is still a relevant part of the "mix" of information that determines whether the alleged misrepresentations were material.  This dispute, raised earlier in this litigation, is now ripe for decision, since the S.E.C. has now moved to exclude those portions of the Bank's experts' opinions that rely on such media reports.

By way of background, the Case Management Plan filed September 22, 2009 required the S.E.C. to disclose the reports of its experts on November 20 and the Bank to disclose the reports of its experts on December 10.  On November 20, the S.E.C. duly served the report of its

sole purported expert, Prof. Robert M. Daines of Stanford Law School, who offered opinions on, among other things, the issue of "materiality," that is, whether the allegedly concealed information, if disclosed, would have been viewed by a reasonable investor as having significantly altered the total mix of information made available.  TSC Indus. v. Northway, 426 U.S. 438, 449 (1976).  So far as media reports were concerned, Prof. Daines first opined, consistent with the S.E.C.'s already enunciated position, that they were irrelevant because of the Proxy Statement's own warnings not to consider them; but he further opined that, even if not otherwise excluded, they did not render the alleged misrepresentations immaterial.  See, e.g., Daines Decl. ¶¶ 4, 24-25, 40-49.

For its part, the Bank, on December 10, served the reports of no fewer than six purported experts, namely, Irving S. Becker, who opined on the issue of executive compensation; Stephen B. Blum, who opined on accounting issues; Prof. Joseph A. Grundfest of Stanford Law School, who opined on the issue of materiality; Prof. William W. Holder of the University of Southern California Business School, who opined on accounting issues; Prof. R. Glenn Hubbard of Columbia Business School, who opined on the issue of materiality; and Morton A. Pierce, Esq., who opined on disclosure practices.  The opinions of Professors Grundfest and Hubbard, in particular, relied heavily or exclusively on media reports as the basis for determining materiality.

The S.E.C. then moved to exclude most, if not all, of the Bank's experts. (The S.E.C.'s motion, and most of the briefing referred to herein, was in the form of letter briefs, which the Court will arrange to docket promptly after filing this Opinion.) Following initial briefing, the Court convened an in-court conference on December 17, 2009, at which the Court expressed tentative views that much of the proposed testimony of the S.E.C.'s own expert might well be inadmissible, but that, in any event, it was unlikely the Court would allow the Bank to call six purported experts, several of whom were seemingly repetitive of others. See, e.g., Transcript of December 17 Hearing ("Tr.") at 4-7, 9-10. The Court also took note that there might be unresolved questions about the whether the methodology used by some of the experts met the requirements of Rule 702 of the Federal Rules of Evidence, but the Court agreed with the parties that consideration of the methodological issues should await the completion of the experts' depositions. Tr. at 5-6, 18-20. Finally, on the issue of the whether the warning statements in the Proxy Statement rendered inadmissible the opinions of the Bank's experts premised on the media reports, the Court invited further briefing, to be completed by December 30, 2009. Tr. at 38-39.

With the aid of this additional briefing, the Court now regards this last issue as a simple one:

According to the Amended Complaint, the Proxy Statement, fairly read, represented that no Merrill bonuses would be paid without

subsequent Bank consent, whereas the Bank had already given its consent. The fact that the media were predicting, as the Bank claims, that Merrill would in fact pay bonuses is entirely irrelevant to any aspect of this issue, for the alleged falsehood consisted of representing as a contingency what was in fact an agreement already reached, and it does not appear that virtually any of the media reports disclosed that agreement.

Furthermore, even if the media reports of Merrill's likelihood of paying bonuses could otherwise somehow be said to bear indirectly on the question of how material was the Bank's alleged failure to disclose that it had in fact already approved the payment of such bonuses when it purported to represent that it had not given such approval, the warnings in the Proxy Statement totally changed the relevant mix of information for assessing materiality. Since the test of materiality is whether the undisclosed information, if disclosed, "would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available," TSC Indus., 426 U.S. at 438, one must ask what a reasonable investor would reasonably consider the total mix of information in this case. The answer is that since the Bank itself warned investors not to rely on the media, it would be unreasonable for a shareholder to consider the media pronouncements to be part of the relevant mix of information.

In effect, the Bank is arguing that, even though it expressly warned its shareholders to disregard the media, it can now defend itself by asserting that a reasonable shareholder would have disregarded these warnings and, by consulting the media, perceived that the Bank's alleged lies were immaterial. Even a zealous advocate might perceive that such an argument hints at hypocrisy.

Accordingly, the Court hereby excludes from being introduced into evidence at trial (or on summary judgment) all those portions of the proffered testimony of the parties' experts that relate, directly or indirectly, to media reports concerning the year-end bonuses. At first blush, this would appear to eliminate the entirety of Prof. Grundfest's testimony, much of Prof. Hubbard's testimony, and, for that matter, a portion of Prof. Daines's testimony; but the Court will leave it to the parties, in the first instance, to parse this out more precisely. As to the other issues raised in the S.E.C.'s motion, e.g., whether the testimony of certain witnesses is cumulative, the Court reserves decision until at or near the time of trial. The Court likewise gives leave to the parties to raise further issues relating to the testimony of the experts, e.g., methodological issues, after the depositions of the experts are completed.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       January 4, 2010