PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS         NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

FACSIMILE (212) 757-3990

DANIEL J. KRAMER

TELEPHONE (212) 373-3020
FACSIMILE (212) 492-0020
E-MAIL: dkramer@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

December 16, 2009

**By Facsimile**
Honorable Jed S. Rakoff
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*SEC v. Bank of America Corp.*, No. 09-Civ-6829 (JSR)

Dear Judge Rakoff:

We write on behalf of our client, defendant Bank of America Corporation ("BOA") in response to the letter to Your Honor from the Securities and Exchange Commission ("SEC") dated December 14, 2009. We respectfully submit that the Court should reject the SEC's effort to exclude the testimony of all of BOA's expert witnesses based solely upon their written reports (the "Motion") because (1) the request is premature and (2) the request is wholly without merit. In addition, BOA believes that the Court can provide ample time for the completion of expert discovery while maintaining the existing schedule for fact discovery, summary judgment briefing and trial.

**Standard for Exclusion of Expert Testimony**

The SEC's argument that six experts is simply too many for a "straightforward" case such as this ignores the legal standards for excluding expert testimony and ignores the fact that the SEC has accused BOA of serious violations of the securities laws, has submitted its own expert report on numerous issues, and has sought sweeping discovery, including 28 depositions and responses to 28 documents requests, 10 interrogatories, and 129 requests to admit. Rule 702 of the Federal Rules of Evidence ("FRE") is a broadly written rule that permits the use of "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." *Accord Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab., Litig.*, 643 F. Supp. 2d 482, 493 (S.D.N.Y. 2009). Thus, expert testimony is generally admissible if it is "helpful to the trier of fact." *AUSA Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200, 1202 (S.D.N.Y. 1995). "Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

"The trial court should exclude evidence . . . only when [it] is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (collecting cases). "[R]ejection of expert testimony is the exception rather than the rule." FRE 702, advisory committee's notes (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## The SEC's Motion Is Premature

The SEC is asking this Court to rely on a truncated record and abbreviated briefing to determine whether the testimony of BOA's expert witnesses may be excluded under the standards set forth in FRE 702 and *Daubert*. Courts generally decline such invitations to make premature rulings on such critical issues.[1] At a minimum, expert discovery should go forward so that any future motions to exclude testimony will be based on a fully developed record of the experts and their opinions following cross examination and any rebuttal testimony.

In this case, few of the arguments asserted by the SEC address the issue of whether BOA's proposed expert testimony would be helpful to the jury. Instead, the SEC is contending that the jurors should be affirmatively prohibited from even hearing expert testimony to help them better understand such issues as accrual accounting, the total mix of information available to BOA shareholders at the time of the shareholder vote on the BOA-Merrill merger, the role of bonuses in the compensation structure of the financial services industry, and standard practices with respect to the preparation of proxy statements. Moreover, by asking the Court to consider its Motion now, the SEC, as it admits (SEC Ltr. 1 n.1), is exposing the Court, and BOA, to the potential burden of two rounds of motions to exclude the same expert witnesses. BOA respectfully submits that the most efficient and prudent course is for the SEC to make any motions *in limine* on a full and appropriate record, and after full briefing of relevant legal and factual issues. If, however, the Court takes the Motion under consideration now, then the SEC should be precluded from making any additional motions to exclude these same witnesses. Consistent with the Court's determination to maintain an efficient and expeditious schedule in this action, the SEC should not get two bites at the apple.

## The SEC Has Not Established a Basis for the Exclusion of Any of BOA's Experts

### Professor R. Glenn Hubbard

The SEC alleges that the $5.8 billion bonus pool cap allegedly not disclosed in the proxy materials, in isolation, would have been material to a BOA shareholder. In his expert report, Professor R. Glenn Hubbard, Dean of the Columbia Business School, opines that an event study shows that disclosure of the cap would not have affected the value of the combined companies, and so would not have been important to a shareholder's decision whether to vote in favor of the merger. (Hubbard Rep. ¶ 10.) The SEC mischaracterizes Professor Hubbard's opinion as an opinion concerning the legal issues of materiality, when, in fact, Professor Hubbard repeatedly makes clear in his report that he is addressing the economic materiality of information, which he defines as information that affects the value of an asset. (Hubbart Rep. ¶¶ 11, 13, 45.) FRE 704 expressly provides that testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Indeed, the federal courts routinely permit expert testimony on the issue of materiality in securities litigation. *See, e.g., United States v. Schiff*, 538 F. Supp. 2d 818, 844-45 (D.N.J. 2008) (allowing expert investor's testimony "on what information is important to a reasonable investor"); *State Teachers Ret. Bd. v. Fluor Corp.*, 589 F. Supp. 1268, 1273 (S.D.N.Y. 1984) (allowing a former senior securities analyst to testify as an expert to "the materiality of the

---

[1] *See, e.g., AUSA Life Ins.*, 899 F. Supp. at 1201-02 ("At this preliminary stage, we are reluctant to rule on the admissibility of each item in [the expert's] report. The parties have not yet completed expert depositions, much less trial preparation."); *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, Nos. 02 Civ. 16000, 02 Civ. 16001, 02 Civ. 16005, 02 Civ. 16013, 02 Civ. 16027, 2007 WL 1514282, at *7 (N.D. Ohio May 22, 2007) (denying "pre-deposition stage" motion to strike opposing party's expert report.) *See also Reed v. Edmonds*, No. 05 Civ. 5906, 2006 WL 435453, at *1 (S.D.N.Y. 2006) (holding that "[d]eferring consideration of motions *in limine* . . . makes sense for a number of reasons," including that summary judgment may obviate the need to address the motion and that by the eve of trial, "the nature of the evidence to be offered will generally be known and the contours of the actual trial are more well defined[,] . . . permit[ting] the trial judge to render a more well-informed decision").

information in tipping" case). Moreover, the identical issue is addressed (albeit without an event study or other economic analysis) by Professor Robert M. Daines, who opines that the $5.8 billion cap was "an important provision of the proposed transaction" (Daines Decl. ¶ 11).[2]

The SEC also erroneously contends that Professor Hubbard's analysis is irrelevant because it focuses on disclosures made after the shareholder vote. Event studies, such as the one performed by Professor Hubbard, frequently address the materiality of an alleged misrepresentation or omission at the time stock was purchased by testing whether the *subsequent* disclosure of corrective information caused a movement in a stock price, and are routinely admitted into evidence in securities litigation. Indeed, this Court, and numerous other courts, has held that movement in stock price following a "corrective disclosure" may be evidence of materiality. *See, e.g., In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 138 (S.D.N.Y. 2008) (Rakoff, J.) (citing movement in a stock's price following a corrective disclosure as evidence of the materiality of false statements); *In re Gaming Lottery*, No. 96 Civ. 5567, 2000 WL 193125, at *1-2 (S.D.N.Y. Feb. 16, 2000) (accepting plaintiffs' expert's event study to show materiality, damages, and causation in securities fraud case). In any case, these criticisms go to the weight of the evidence, and can be addressed through cross-examination of Professor Hubbard or rebuttal, but are not a proper basis to exclude the testimony.

Finally, Professor Hubbard is not, as the SEC contends, attempting to supplant the role of the jury or fact witnesses by opining that Merrill's compensation expense "was sufficient to advise shareholders that [BOA] had permitted Merrill to pay bonuses of up to $5.8 billion." (SEC Ltr. 3.) Rather, Professor Hubbard appropriately explains that Merrill's 2008 compensation expense was in line with expectations, providing context for his event study and his opinion that information concerning the $5.8 billion cap was not material. *See, e.g., Schiff*, 538 F. Supp. at 844 & n.26 (permitting defendant's expert, Professor Hubbard, to "explain[] and analyze[] the economic implications of [a company's] announcement," to give context to his economic analysis).

### Stephen Blum and Professor William Holder

The test for materiality of an alleged omission is whether, in light of "the 'total mix' of information" available in the market, "a reasonable shareholder would consider [the allegedly omitted information] important in deciding how to vote" on a corporate transaction. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). BOA contends that the total mix of information available to BOA shareholders at the time of the shareholder vote included, among other things, the proxy statement and the financial disclosures incorporated by reference into the proxy statement, and that these materials contain sufficient information about Merrill's compensation expenses and bonus payments to render the incremental information that BOA had agreed to a $5.8 billion cap on Merrill's 2008 bonus payments immaterial in context.

Stephen Blum is a Certified Public Accountant who has worked at investment banking boutiques and financial advisory firms since 2001, and for 25 years before that worked in the corporate finance division of KPMG. He is an expert on accounting, in particular, accounting issues relating to financial statements. Professor William Holder is a Professor of Accounting at the University of Southern California and is an expert on accounting. Mr. Blum and Professor Holder, from their different perspectives, will provide testimony to help the jurors understand the compensation information contained in Merrill's public filings. These filings are all expressly incorporated by reference into the proxy statement.

Neither expert is usurping the role of the jury. The SEC's request to exclude these witnesses is based on the false premise that the "reasonable investor" is the equivalent of any reasonable person or juror, and that, therefore, if a juror does not understand how to read Merrill's financial statements no expert should be permitted to explain what those statements say. But the reasonable person or juror may not even be an investor, much less a reasonable investor. The law provides that a

---

[2] A copy of the November 20, 2009 Declaration of Robert M. Daines (the "Daines Report") is attached.

reasonable investor is "presumed to have a general understanding of the business world," which a juror might not possess. *United States v. Koenig*, 388 F. Supp. 670, 700 (S.D.N.Y. 1974); 3B Fed. Jury Prac. & Instr. § 162.235 ("[Y]ou may assume that reasonable investors and stockholders have a general understanding of the business world."). Because the total mix of information includes, among other things, financial statements,[3] it is appropriate to provide expert testimony to educate jurors about the meaning of financial statements. Accordingly, courts frequently allow experts to provide "the groundwork in the form of an opinion to enable the jury to make its own informed determination." *United States v. Russo*, 74 F.3d 1383, 1395 (2d Cir. 1996); *see also SEC v. Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007) (permitting expert testimony concerning GAAP, holding that "[a]n average juror may not be familiar with the technical meaning under GAAP of the terms 'delivery,' 'collectability,' and 'fixed price,' nor understand how these various factors work together to yield a conclusion"); *Bilzerian*, 926 F.2d at 1294 ("[E]xpert testimony may help a jury understand unfamiliar terms and concepts.").

The SEC is also wrong that the testimony of Mr. Blum and Professor Holder should be excluded because the subjects they address have been addressed by fact witnesses during depositions. (SEC Ltr. 3-4.) The SEC has cited no fact-witness testimony addressing the fundamentals of accounting, including the significance of accrual accounting, as BOA's experts do, and also has cited no support for its position that a party may not provide expert testimony just because a fact witness in the case may have knowledge or opinions concerning the same subject. *See United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994) (expert testimony not precluded because it overlapped fact testimony).

### Irving Becker

BOA contends in this case that the omission of the $5.8 billion bonus cap is immaterial in light of the proxy statement's disclosure that Merrill Lynch was required to "conduct its business in the ordinary course in all material respects [and] use reasonable best efforts to maintain and preserve intact its business organization and advantageous business relationships and retain the services of its key officers and key employees." (Merger Agreement § 5.1.) Mr. Becker, a compensation consultant who has worked for numerous financial services clients, is prepared to testify, among other things, to the ordinary course of business for an investment bank, including that they rely heavily on the payment of year-end annual bonuses to maintain the human capital, and thus the value of the firm. In addition, Mr. Becker's testimony is relevant rebuttal to Professor Daines's contention that BOA shareholders may have expected BOA to reduce the amount of bonuses paid at Merrill. (Daines Decl. ¶ 34.) Mr. Becker shows, for example, that the payment of expected year-end compensation in a merger context is important to retain the acquired company's employees.

### Morton Pierce

Morton Pierce, the Chairman of the M&A Group at Dewey & LeBoeuf LLP, will opine on two areas relevant to this case. First, Mr. Pierce will provide the jury with information concerning certain provisions of the proxy disclosures and merger agreement, such as disclosure schedules, disclaimer language, and the practice among lawyers in the M&A community of using successful

---

[3] *See, e.g., United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) ("The 'total mix' of information may include data sent to shareholders by a company in addition to its proxy materials."); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 375 (E.D.N.Y. 2003) (charging shareholders with knowledge of public filings available on the SEC's website); *Kahn v. Wein*, 842 F. Supp. 667, 675 (E.D.N.Y. 1994) ("[T]he reasonable investor could perform the simple mathematical calculations necessary to determine the present and future values of the proposed transaction . . ."); *Gulf & W. Indus., Inc., v. Great Atl. & Pac. Tea Co., Inc.* 356 F. Supp 1066, 1071 (S.D.N.Y. 1973) ("[I]t is assumed that the ordinary investor in [a company] would have read the reports supplied to him by the company and would have known that [the company's] dividends were in a decline; that [the company] had passed a dividend and that [it] had lost money.").

prior precedent when drafting disclosures. Second, Mr. Pierce will provide testimony that several characteristics of the proxy disclosures and merger agreement at issue in this case are consistent with the custom and practice in that community.

Expert testimony concerning provisions of proxy statements and merger agreements and industry practice is relevant because it will "assist the trier of fact to understand the evidence"—the proxy disclosures and merger agreement—and "to determine a fact in issue"—whether BOA negligently omitted material information from the proxy disclosures. Mr. Pierce's testimony also is relevant to the issue of negligence. *See Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) ("[t]estimony concerning the ordinary practices of those engaged in the securities business is admissible . . . to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry").[4] Contrary to the SEC's assertion, Mr. Pierce's testimony concerning custom and practice is not barred by the Court's December 7, 2009 Order denying BOA's motion to compel production of specified internal SEC documents. The Court ruled that BOA cannot claim to have relied on internal SEC documents. (Ct.'s Mem. & Order 1 (Dec. 7, 2009).) Pierce's proposed testimony, by contrast is substantiated by the *publicly* filed documents used by practitioners in the field.

In addition, as set forth above, the SEC's contention that certain fact witness may have overlapping knowledge with Mr. Pierce provides no basis to exclude his testimony. *Supra* at 4. The SEC has not committed, for example, not to challenge the credibility or objectivity of the lawyers who drafted the Proxy Statement. Expert testimony is therefore plainly appropriate to explain the choices the made. Further, , Mr. Pierce's survey of proxy filings is a subject upon which no other witness could testify. Moreover, contrary to the SEC's contention that Mr. Pierce is giving a legal opinion concerning state of the law governing disclosures, (SEC Ltr. 5), in his report Mr. Pierce expressly disclaims that he is offering such opinion. (Pierce Report 7.) Similarly, Mr. Pierce offers no opinion, as the SEC suggests, on the adequacy of the specific legal advice that BOA received, whether such advice was relied upon by BOA in good faith, or other matters related to the sufficiency of BOA's advice of counsel defense.

### Joseph Grundfest

The SEC argues that Professor Grundfest's testimony should be excluded because he reviews news stories and analyst reports outside the four corners of the proxy statement "that shareholders could not have relied on." But, this argument misses the point. Professor Grundfest's testimony concerns the information that was in the total mix of information about the payment of compensation and bonuses at Merrill and relates to materiality. That "total mix" of information includes, among other things, newspaper articles and television news shows.[5] That does not change because the proxy

---

[4] *See, also, Bilzerian*, 926 F.2d at 1295 ("testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice" (citing *Marx*)); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) (discussing cases in which "courts allowed testimony from experts within the securities industry merely to discuss the ordinary practices and usages of that industry"); *see also Gruss v. Curtis Publ'g Co.*, 534 F.2d 1396, 1403-04 (2d Cir. 1976) (finding in a Section 14(a) case that evidence concerning "custom or practice" by lawyers was "entitled to weight" in assessing liability under the federal proxy rules). Moreover, the proposed testimony rebuts the SEC's contention that the Proxy Statement violated the SEC's "Titan Report," from which the SEC claims "the mergers and acquisitions ('M&A') and defense bar were well aware before the proxy statement was filed . . . that the practice employed by Bank of America . . . was not legally sound under the federal securities laws." (SEC's Sept. 9, 2009 Mem. of Law in Supp. of Entry of J. at 6.)

[5] *See, e.g., Int'l Paper*, 985 F.2d at 1199 (holding that readily available media reports and data sent to shareholders by a company in addition to its proxy materials could be taken into consideration by a court in determining whether a disclosure was materially misleading); *Gerber v. Computer Assoc. Int'l, Inc.*,

statement told investors to rely on information about the deal in those documents. Indeed, the SEC's expert, Professor Daines, also addressed whether, based on newspaper articles in the total mix of information, it was known that BOA had authorized Merrill to make bonus payments.[6] (Daines Decl. ¶ 46.) BOA should be permitted to respond to arguments made by the SEC's expert.

The SEC's assertion that analyst reports are irrelevant because they are "not generally available" is also unavailing. Courts regularly look to analyst reports to assess the "total mix" of information. *See, e.g., In re Bristol Myers Squibb Co Sec. Litig.*, 586 F. Supp. 2d 148, 161 n.7 (S.D.N.Y. 2008) (noting that analyst reports "show whether and when information was provided to the market such that the reports contributed to the total mix of information").

## Reservation of Rights

Because BOA believes that motions to exclude expert testimony are premature at this time, *supra* at 2, BOA does not now seek to exclude Professor Daines, although his report contains various statements that may be inadmissible and suffers from many of the defects that the SEC, incorrectly, claims it sees in the reports of the BOA experts.[7] BOA reserves the right to move immediately, however, if the Court determines that motions to exclude expert testimony are not premature at this time.

## The Court Should Not Modify the Case Management Order as the SEC Proposes

The SEC requests, in the event the Court denies its request, that the deposition deadline be extended to January 22, 2009—effectively extending the entire trial schedule by one month. As an initial matter, there is simply no reason to extend past December 24 (the date provided in the Case Management Order) the deadline for depositions of fact witnesses. These depositions have been proceeding apace, and BOA has scheduled witnesses as requested or subpoenaed by the SEC. Moreover, BOA believes that ample time for completing expert discovery could be provided without disrupting the Court's schedule for summary judgment briefing and trial. If the Court were, for example, to extend the deadline for expert depositions no later than January 15, 2009, the parties could complete expert discovery in advance of briefing in opposition to any motions for summary judgment, without affecting the rest of the schedule.[8]

Respectfully,

Daniel J. Kramer

Enclosure
cc: Lewis Liman (via email)
Alexander Vasilescu (via email)

---

No. 91 C.V. 3610, 2000 WL 307379, at *8 (E.D.N.Y. 2000) (holding that information was not material because it was "widely reported in the major financial publications and . . . television news shows").

[6] The SEC also has served BOA with requests to admit that no news reports disclosed that Merrill was authorized to make bonus payments up to the amount of the agreed-upon cap. (Req. to Admit 95, 96.)

[7] For example, section III of Professor Daines' report is nothing but pure legal commentary and would usurp the role of the Court to instruct the jury on the law. Section IV of Professor Daines' report contains nothing but speculation about the significance of certain information to a BOA shareholder and substitutes the views of the press for any economic analysis of materiality.

[8] The SEC has not indicated any intent to seek leave to introduce rebuttal reports. We note that, to the extent that the SEC does not introduce a rebuttal expert in accordance with the Case Management Order, they will be prohibited from introducing rebuttal testimony at trial. *See, e.g., Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 203 (1st Cir. 1996).