PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
TELEPHONE (212) 373 3000

NEW YORK  NEW YORK  10019-6064
FACSIMILE (212) 757 3990

2001 K STREET NW
WASHINGTON DC 20006 1047
TELEPHONE (202) 223 7300
FACSIMILE (202) 223 7420

FUKOKU SEIMEI BUILDING
2 2 UCHISAIWAICHO 2 CHOME
CHIYODA KU TOKYO 100 0011 JAPAN
TELEPHONE (813) 3597 8101
FACSIMILE (813) 3597 8120

UNIT 3601 FORTUNE PLAZA OFFICE TOWER A
NO 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE S REPUBLIC OF CHINA
TELEPHONE (86 10) 5828 6300
FACSIMILE (86 10) 6530-9070/9080

12TH FLOOR  HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300
FACSIMILE (852) 2840 4300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU U K
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

WRITER S DIRECT DIAL NUMBER
(212) 373-3020

WRITER S DIRECT E MAIL ADDRESS
dkramer@paulweiss com

WRITER S DIRECT FACSIMILE
(212) 492-0020

December 23, 2009

**By Facsimile**

Honorable Jed S. Rakoff
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*SEC v. Bank of America Corp.*, No. 09-Civ-6829 (JSR)

Dear Judge Rakoff:

In accordance with Your Honor's direction at the hearing on December 17, 2009, we write on behalf of our client, defendant Bank of America Corporation ("BOA"), to address the following sentences (the "cautionary statement") that appear in BOA's Joint Proxy Statement relating to its acquisition of Merrill Lynch ("Merrill"):

> You should rely only on the information contained or incorporated by reference in this document. Neither Bank of America nor Merrill Lynch has authorized anyone to give any information or make any representation about the merger or our companies that is different from, or in addition to, that contained in this document or in any of the materials that have been incorporated in this document. (Proxy Stmt., 124.)

In this case, the SEC contends that the Joint Proxy Statement contained material misstatements and omissions concerning whether Merrill would pay incentive compensation to its employees. BOA disagrees, and will present evidence at trial showing, among other things, that the Joint Proxy Statement was not misleading and that reasonable investors would have understood that Merrill's employees would be receiving billions of dollars of incentive compensation. The SEC now argues that this cautionary statement should limit the evidence the jury considers on this issue so that it only receives information contained in or incorporated by reference in the proxy materials, rather than the total mix of information available to investors regarding the incentive compensation to be paid to Merrill's employees at the time of the shareholder vote. While the SEC is certainly free at trial to present its theory of the case, it goes too far in asking the Court to exclude the competing evidence and ignore the longstanding "total mix" standard. The Court should decline the SEC's invitation.

Specifically, the SEC seeks to exclude publicly available information contained in the media (including leading print, internet and television outlets) and analyst reports released after disclosure of the Merger Agreement and the Joint Proxy Statement, all of which indicated that Merrill's employees would be receiving billions of dollars in bonuses for 2008. Indeed, after a comprehensive search of public records, Professor Joseph Grundfest was unable to find a single media or analyst report suggesting that Merrill's employees would not receive bonuses for 2008. (Grundfest Rpt. ¶ 11.) Instead, Professor Grundfest's search identified dozens of articles and reports in varying print, online and television media, including NBC News, the Today Show, CNN, Bloomberg, the New

York Times online, the Financial Times, Business Week and Fox News Network (*id.* ¶ 5), to name a few, and dozens of analyst reports (*id.* ¶ 8), indicating the broad-based awareness that Merrill would be paying billions of dollars to its employees. This is compelling evidence showing that the market understood that Merrill would be paying significant bonuses to its employees. It undermines the SEC's omission argument (as it shows that the market understood the allegedly omitted information) and tends to render any alleged misstatement immaterial. For the reasons that follow, we respectfully submit that the Court should reject the SEC's argument.

*First*, the SEC's position is contrary to a long and unbroken line of cases, starting with the Supreme Court's decision in *TSC Industries., Inc.* v. *Northway, Inc.*, 426 U.S. 438 (1976). *TSC* holds that, in a Section 14(a) case, the issue whether an allegedly omitted fact is material should be considered in light of the total mix of information available in the market.[1] The Supreme Court stressed that the question of materiality "is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor" in deciding how to vote on a corporate transaction *Id.* at 445. Information is material—and liability attaches—only when it would have significantly altered the total mix of information available to reasonable investors. *Id.* at 449.

The Supreme Court's decision in *TSC* "has been consistently understood to mean that information available through non-corporate channels may be admitted to prove or disprove" materiality. *Jaroslawicz* v. *Englehard Corp.*, Civ. No. 84-3641 (CSF), 1989 WL 32864, at *3 (D.N.J. Apr. 5, 1989) (denying plaintiffs' efforts to exclude analyst reports on a motion *in limine* in a Section 10(b) case and holding that the jury must consider both the corporation's statements and information available through non-corporate channels).[2] As the Second Circuit held in *GAF Corp.* v. *Heyman*, 724 F.2d 727, 729 (2d Cir. 1983), a Section 14(a) case, "[t]he 'total mix' of information available . . . include[s] the many news stories that the closely watched contest [] generate[s]." It includes "all information reasonably available to the shareholders." *Starr ex rel. Estate of Sampson* v. *Georgeson S'holder, Inc.*, 412 F.3d 103, 110 (2d Cir. 2005).[3] This is consistent with the general view that "there is no duty to disclose information to one who reasonably should already be aware of it." *Seibert* v. *Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (internal citations omitted); *see also In re Adams Golf, Inc. Sec. Lit.*, 381 F.3d 267, 279 (3d Cir. 2004) ("Adams Golf was not duty-bound to disclose general industry-wide trends easily discernable from information already available in the public domain." (internal citations and quotation marks omitted)). Thus, "when the subject of a proxy solicitation has been widely reported in readily available media, shareholders may be deemed to have constructive notice of the facts reported, and the court may take this into consideration in determining whether representations in or omissions from the proxy statement are materially misleading." *United Paperworkers Int'l Union* v. *Int'l Paper Co.*, 985 F.2d 1190, 1199

---

[1] The "total mix" standard also applies in an affirmative misrepresentation case. *See United Paperworkers Int'l Union* v. *Int'l Paper Co.*, 985 F.2d 1190, 1194, 1199 (2d Cir. 1993) (applying "total mix" test in case alleging false and misleading representations and omissions); *Phillips* v. *LCI Int'l Inc.*,190 F.3d 609, 617 (4th Cir. 1999) ("[E]ven lies are not actionable when an investor possesses information sufficient to call the misrepresentation into question. After all, the securities laws impose liability only when there is a substantial likelihood that an alleged misrepresentation significantly altered 'the total mix' of information a reasonable investor (the market) possesses." (citations, internal quotation marks, and *Phillips*' brackets omitted)).

[2] The standard for assessing materiality under Section 14(a) and Section 10(b) is the same. *See Basic Inc.* v. *Levinson*, 485 U.S. 224, 232 & n.7 (1988) ("We now expressly adopt the *TSC* standard of materiality [from § 14 (a) and rule 14a-9] for the § 10(b) and Rule 10b-5 context.").

[3] *See also In re Ames Dept. Stores Inc. Stock Lit.*, 991 F.2d 953, 968 (2d Cir. 1993) (reversing where the district court failed to consider "releases and documents [that] contributed to the total mix of information available to the investing public") (internal citations and quotation marks omitted); *Int'l Paper*, 985 F.2d at 1199 (the "total mix" of information available to shareholders in a Section 14 case includes "information already in the public domain and facts known or reasonably available to shareholders," including news and analyst reports) (internal citations and quotation marks omitted).

(2d Cir. 1993). In this context, it certainly is relevant in assessing the materiality of any alleged omission by showing that the market understood—regardless of who would be distributing the checks—that Merrill's employees would be receiving billions in discretionary incentive compensation. It is also relevant in assessing the materiality or significance of any alleged misstatement.

There are sound policy reasons for the "total mix" rule. As the Supreme Court observed, requiring disclosures of information already widely available would potentially "bury the shareholders in an avalanche of trivial information," much of it already well-known[.] *TSC Indus.*, 426 U.S. at 448-49. *See also Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 517 (7th Cir. 1989) ("It is pointless and costly to compel firms to reprint information already in the public domain."); *Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303, 321-322 (S.D.N.Y. 1996) (same), *aff'd* 108 F.3d 1370 (2d. Cir. 1997). This would "hardly [be] conducive to informed decisionmaking." *TSC Indus.*, 426 U.S. at 448-49.

***Second***, the longstanding *TSC* "total mix" doctrine is not altered in this case by the inclusion in the Joint Proxy Statement of the cautionary language because, as the Court noted in *TSC*, the element of materiality—unlike the element of reliance—is an "objective" standard. A party cannot alter it by a statement in the proxy statement. The Second Circuit made this point in *Caiola v. Citibank, N.A., New York*, 295 F.3d 312 (2d Cir. 2002), where Caiola sued Citibank for violations of Section 10(b), alleging that Citibank had made oral misrepresentations concerning trading strategies. *Id.* at 319-320. The District Court held that such statements could not be considered a material misrepresentation, because the terms of the written agreement between the parties stated that neither party was "relying on any advice, statements or recommendations . . . of the other party." *Id.* at 320. In reversing the District Court, the Second Circuit held that the District Court's conclusion that the disclaimer "precluded a finding of materiality [of the oral representations] was incorrect because materiality is an objective standard" and that "[t]he disclaimers are relevant to the analytically distinct element of reliance." *Id.* at 328-29. Likewise, here, the cautionary statement advising readers not to rely on information outside of the proxy material is relevant, if at all, to the issue of reliance and does not alter the test for materiality, which must be based upon an analysis of the total mix of information in the marketplace.

***Third***, the cautionary statement on its face does not alter the "total mix" test, but rather makes clear that BOA and Merrill were not responsible for all statements in the marketplace. The first sentence of the cautionary statement regarding reliance "only on the information contained or incorporated by reference in this document" must be read in context with the second sentence, which underscores that "[n]either Bank of America nor Merrill Lynch has *authorized* anyone to give any information or make any representation about the merger or our companies that is different from, or in addition to, that contained in this document or in any of the materials that have been incorporated in this document". (Proxy Stmt., 124 (emphasis added).) The provision is intended to advise shareholders that neither BOA nor Merrill *are responsible for* information not contained in the Joint Proxy Statement.

This formulation should not come as a surprise to the SEC, as it has expressly recommended statements just like the one BOA and Merrill used in the Joint Proxy Statements as the "plain English" way to convey the notion that the issuer has not authorized information contained in sources other than the proxy materials. Specifically, the SEC's guidance on drafting proxies and other filings contains the following instruction:

> [H]ere's a common sentence found in prospectuses:
>
> NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION OTHER THAN THOSE CONTAINED OR INCORPORATED BY REFERENCE IN THIS JOINT PROXY STATEMENT/PROSPECTUS, AND, IF GIVEN OR MADE, SUCH

INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED.

Here's one possible plain English rewrite:

You should rely only on the information contained in this document or that we have referred you to. We have not authorized anyone to provide you with information that is different.[4]

BOA's cautionary statement in the Joint Proxy Statement follows the SEC "plain English" recommendation regarding how to put shareholders on notice that BOA is not responsible for any information gleaned from sources other than the proxy material.[5] Having advised issuers to express these concepts in this manner, the SEC should not now be heard to argue that the cautionary statement has a different meaning; one that has the dramatic and unwitting effect of eliminating the "total mix" defense from the arsenal of the vast majority of issuers without the slightest warning, much less formal rulemaking.[6]

*Fourth*, alternatively, the SEC's argument—like BOA's response—goes to the weight of the news and analyst reports, not to their admissibility. *See Jaroslawicz*, 1989 WL 32864, at * 3 (denying motion *in limine* to exclude certain market reports, holding that plaintiff's argument that the reports "could not have affected the 'total mix'" was "[an] argument for . . . the jury; plaintiff seeks to diminish the credibility of a possible . . . defense"). *See also In re Northern Telecom*, No. 93 Civ. 4384 (MGC), 1994 WL 455534, at *4 (S.D.N.Y. Aug. 22, 1994) (holding that the question of whether a statement or omission is materially misleading is a "mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts."); *Lou v. Belzberg*, 728 F. Supp. 1010, 1022 (S.D.N.Y. 1990) (finding that the question of whether a "letter and 13D statements when read together could have misled a reasonable investor" was a "question [] of triable fact").[7] The way is open for the SEC to argue to the jury that the widely-available public information

---

[4] *See* SEC, A Plain English Handbook: How to create clear SEC disclosure documents 18 (1998), http://www.sec.gov/pdf/handbook.pdf (last visited Dec. 22, 2009); *see also* Speech by SEC Commissioner: Remarks at the Plain Language Association International's Fifth International Conference (Nov. 4, 2005), available at http://www.sec.gov/news/speech/spch110405cag.htm (last visited Dec. 22, 2009) (equating the statement "No salesperson, dealer or any other person has been authorized to give any information or to make any representations, other than those contained herein, in connection with the offer contained herein and, if given or made, such other information or representations must not be relied on as having been authorized by the fund, the fund's investment adviser or the fund's distributor" with the statement "You should rely only on the information contained in this document. We have not authorized anyone to provide you with different information.").

[5] This issue is not confined to the BOA/Merrill merger. We reviewed the 134 proxy statements considered by BOA's expert, Morton Pierce, as part of his report, and found that approximately 85% contained similar cautionary language. We are available to present this voluminous information, or a summary thereof, to the Court at its convenience.

[6] In *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004), the SEC filings at issue contained cautionary language similar to that contained in the Joint Proxy Statement, advising: "You should rely only on the information contained in this prospectus. We have not authorized anyone to provide you with different information." *See* Torch Offshore Inc., Form 424B (Prospectus), at 3 (June 7, 2001), *available at* http://www.sec.gov/Archives/edgar/data/1129650/000095012901501221/h82647b4e424b4.txt (last visited Dec. 21, 2009). In its amicus brief to the Fifth Circuit in *Kapps*, the SEC did not even attempt to argue this "rely only" language altered the total mix of information. Brief for Securities and Exchange Commission as Amicus Curiae Supporting Appellants, *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004) (No. 03-30227).

[7] *See also In re ValueVision Int'l Inc. Sec. Litig.*, 896 F. Supp. 434, 443 (E.D. Pa. 1995) (question of whether the "reasonable investor" understands the term "straight financing" cannot be resolved on a motion to dismiss);

should be disregarded in favor of its interpretation of the Joint Proxy Statement language. The jury, however, should not be precluded as a matter of law from hearing about the public information. Thus, we submit that the better course is to follow the Supreme Court's precedent and let the jury decide on the weight of the information in the total mix, including the cautionary language.

*Fifth,* the media and analyst reports are admissible for other reasons. They purport to interpret the Joint Proxy Statement itself and thus are relevant to demonstrate how the market understood the disclosures that were set forth in the Joint Proxy Statement. *See, e.g., In re Synergen, Inc. Sec. Litig.*, 863 F. Supp. 1409, 1414, 1418-19 (D. Colo. 1994) (on motion for summary judgment, considering analyst report offered by plaintiffs to demonstrate how investors understood information disseminated by defendants in challenged media advisory), *disapproved of on other grounds, Grossman v. Novell, Inc.*, 120 F.3d 1112, 1122 (10th Cir. 1997); *Mgmt. Assistance Inc. v. Edelman*, 584 F. Supp. 1021, 1033 (S.D.N.Y. 1984) (noting in Section 14(a) case that plaintiff "introduced evidence showing the impact that [defendants'] press releases had on the market and suggesting that sophisticated market followers, such as the *New York Times* and *Value Line* were misled by the releases"); *In re Oracle Corp. Sec. Litig.*, No. C 01-0988 SI, 2009 WL 1709050, at *14 & n.14 (N.D. Cal. June 19, 2009) (on summary judgment, considering whether analyst reports offered by plaintiffs "demonstrate that the market understood [an] announcement to have revealed problems with [the defendants' product]," and noting that "analyst reports are not hearsay if offered to prove . . . that the reports were made"); *Billhofer v. Flamel Techs., SA*, __ F. Supp. 2d __, No. 1:07-CV-09920 (CSH), 2009 WL 3241399, at *6-7 (S.D.N.Y. Oct. 5, 2009) (on motion to dismiss, treating manner in which securities analysts interpreted challenged press release as probative of how investors understood it).

The reports also are relevant to, and may be relied on in connection with, the event study performed by Professor Glenn Hubbard. In that context, the reports are not provided to demonstrate what information was in the total mix, but as part of his methodology. *See* Fed. R. Evid. 703; *Goldkrantz v. Griffin*, 97 Civ. 9075 (DLC), 1999 WL 191540, at *4 (S.D.N.Y. Apr. 5, 1999) (discussing analyst reports, newspaper and industry articles and magazines as part of expert's event study); *United States v. Schiff*, 538 F. Supp. 2d 818, 844 & n.26 (D.N.J. 2008) (permitting defendant's expert to "explain[] and analyze[] the economic implications of [a company's] announcement," to give context to his economic analysis).[8]

For all of these reasons, the SEC's argument should be rejected.

Respectfully submitted,

Daniel J. Kramer

Enclosure
cc: Alexander Vasilescu (via email)

---

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 618 F. Supp. 2d 311, 324 (S.D.N.Y. 2009) ("While defendants contend that the Prospectus was clear in its disclosure . . ., a reasonable investor may disagree. This Court cannot substitute its own reasoning for that of a jury and hold, as a matter of law, that this wording was not misleading to a reasonable investor.").

[8] *See also* John Y. Campbell, et al., The Econometrics of Financial Markets, 151 (Princeton University Press 1997) ("The period prior to or after the event may also be of interest and included separately in the [event study] analysis. For example, in the earnings-announcement case, the market may acquire information about the earnings prior to the actual announcement and one can investigate this possibility by examining pre-event returns.").