

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
THREE WORLD FINANCIAL CENTER
SUITE 400
NEW YORK, NEW YORK 10281-1022

December 30, 2009

**VIA FACSIMILE**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
United States Courthouse, Room 1340
500 Pearl Street
New York, NY 10007

    Re:    <u>SEC v. Bank of America Corp., 09-cv-06829 (JSR)</u>

Dear Judge Rakoff:

    On behalf of Plaintiff Securities and Exchange Commission ("Commission"), we submit this letter, in accordance with Your Honor's instruction, in response to Bank of America Corporation's ("BOA") letter of December 23, 2009 ("BOA's 12/23 Letter"). As the Commission argued in its prior letters to the Court, some of BOA's proposed expert testimony should be excluded at this stage on various grounds, including the fact that BOA's shareholders were expressly instructed to refrain from relying on materials that were extrinsic to the merger proxy statement. The arguments BOA raises in its December 23 letter do not merit a different conclusion.

**A.    BOA's Expert Testimony Concerning Press And Analyst Reports Should Be Precluded Because BOA Instructed Shareholders Not To Rely On Such Materials.**

    BOA's letter does not dispute (as it cannot) that the proxy statement included an express instruction to shareholders to "rely only on the information contained" in the proxy statement and incorporated documents. Instead, BOA tries to divert attention away from the clear meaning of its own document, by suggesting that it is the Commission who is to blame for any legal inadequacies in the proxy statement. Thus, BOA contends that the proxy statement's language doesn't mean what it says, and that the Commission's publication, *A Plain English Handbook*, somehow infuses this instruction with a new meaning that is not readily discernible from its language. This contention is baseless and BOA's reliance on the *Handbook* is misplaced.

    As the *Handbook's* introduction makes clear, it is intended "only for [issuers'] general information" and does not represent, as BOA suggests, "SEC guidance on drafting proxies." <u>See</u> A Plain English Handbook: How to create clear SEC disclosure documents (1998), available at http://www.sec.gov/pdf/handbook.pdf; <u>see also id.</u> at 4 ("[T]he SEC has not cornered the market on plain English advice ... This handbook gives you some ideas ... but use whatever works for you."). The *Handbook* discusses issuers' obligation to draft disclosure documents so that they

contain an "orderly and clear presentation" that investors can comprehend. See id. at 3-5. Its chief aim is to encourage issuers to use language that can readily be understood, not legalese or lawyered-up passages with unintelligible meanings. See id. at 5 (plain English requires "investors [to] have the best possible chance of understanding" the issuer's disclosures). Accordingly, BOA cannot rely on the *Handbook* to argue that its unambiguous instruction to shareholders "not to rely" on extrinsic information in fact has meanings other than what it readily conveys. If there is any ambiguity with respect to that instruction (and there is none), it should be interpreted against BOA, who drafted it.

Moreover, the *Handbook* page that BOA cites does not suggest, as BOA contends, that the proxy instruction to shareholders only meant that "BOA and Merrill were not responsible for all statements in the marketplace." BOA 12/23 Letter at 3. The cited page from the *Handbook* suggests that issuers who wish to exclude shareholders' reliance on extrinsic materials should use plain English to say so: instead of stating that extrinsic information "must not be relied upon as having been authorized," they should say, more plainly, that shareholders "should rely only on the information" provided by the issuer. See id. at 18. Neither the original phrase nor the plain English rewrite, however, supports BOA's argument that its proxy instruction did not, in reality, direct shareholders not to rely on extrinsic materials – it plainly did. If BOA only wanted to advise shareholders that extraneous information was "unauthorized," it could have said so plainly without telling shareholders "not to rely" on it.[1]

As explained in the Commission's prior letter, holding BOA to the plain meaning of its instruction to shareholders is sensible and fair. If an issuer chooses to immunize itself from liability from extrinsic statements by instructing shareholders not to rely on them, it should not be permitted to argue, as BOA now does, that shareholders were not misled because they could have relied on such extrinsic materials. The Court should reject BOA's self-serving interpretation of its instruction to shareholders and preclude testimony by proposed experts that, in effect, seeks to introduce press and analyst reports as evidence of what shareholders could have considered.

**B.      The Cases BOA Relies Upon Did Not Involve Proxy Statements That Expressly Instructed Shareholders Not To Rely On Extrinsic Materials.**

The cases BOA cites in which information from "non-corporate" channels was considered are unavailing because none addressed whether extrinsic information is relevant in view of express proxy language instructing shareholders not to rely on it. The few Section 14(a) cases that BOA cites stand for the unremarkable proposition that the "total mix" of information may include materials of which shareholders reasonably should have been aware. See Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc., 412 F.3d 103, 110 (2d Cir. 2005); Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978). These cases do not suggest, let alone hold, that a shareholder who was expressly instructed "not to rely" on extrinsic materials should have

---

[1] In yet another attempt to divert attention away from its own conduct onto that of the Commission, BOA also argues that "the SEC did not even attempt to argue [that a proxy filing's] 'rely only' language altered the total mix of information" based on an amicus brief that the Commission filed in Kapps v. Torch Offshore, Inc., 379 F.3d 207 (5th Cir. 2004). BOA's argument is baseless because that amicus brief focused on another issue, namely, whether material information consists solely of firm-specific nonpublic information.

2

been reasonably aware of extraneous press and analyst reports, as BOA argues here. Indeed, the case law is clear that information such as press reports "may" (not that it ipso facto will) be relevant to the "total mix" of information, depending on the circumstances of the case and, as the Commission's prior letter explained, the information's overall accuracy and reliability. See United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190, 1199 (2d Cir. 1993) ("total mix may include ... information 'reasonably available to the shareholders.'") (emphasis added).

BOA's reliance on GAF Corp. v. Heyman, 724 F.2d 727 (2d Cir. 1983) is similarly inapposite. The defendant there was alleged to have failed to disclose in a proxy statement that he had previously been sued. Rejecting the claim, the Second Circuit noted that the defendant had disclosed the lawsuit in a press release before the shareholders voted, and that this was reported in the news media. See id. at 741. Here, BOA did not issue a press release before the shareholder vote announcing its agreement that Merrill could pay up to $5.8 billion in discretionary bonuses. Nor does BOA suggest that the proxy statement in Heyman contained, as the one here does, an express instruction to shareholders not to rely on press reports. Moreover, the reports that BOA seeks to introduce here are not remotely comparable to those in Heyman: there, the media articles reported the fact that the defendant had been sued; here, by contrast, BOA seeks to introduce media conjecture, as opposed to factual reporting, about Merrill's unconfirmed bonus plan. Such unreliable speculation, as the Commission's prior letter argues, is not relevant to what a reasonable shareholder could have relied upon. See Commission's 12/23 Letter at 2-3 (citing United Paperworkers Int'l Union, 985 F.2d at 1199).

C. **BOA's Instruction To Shareholders Is Relevant To Materiality.**

BOA next argues, relying on Caiola v. Citibank, N.A., New York, 295 F.3d 312 (2d Cir. 2002), that the proxy statement's instruction to shareholders is not relevant to materiality. Caiola did not address the question of whether the "total mix" of information in a proxy vote can include extrinsic statements. Rather, the plaintiff there, who had an arms-length relationship with Citibank, relied on intentional oral misrepresentations that Citibank then sought to avoid by invoking a disclaimer. Here, by contrast, BOA provided written information to shareholders, asked them to cast their vote based on it, and instructed them not to rely on extrinsic information. It should not be permitted to now argue that shareholders could have relied on extraneous press and analyst reports in casting their vote. Although BOA contends that information need not have been disclosed to shareholders if it was "already widely available" (BOA's 12/23 Letter at 3), the proxy rules do not admit of exceptions from mandatory disclosure for information that has been the subject of news articles. BOA cannot provide inadequate proxy materials, instruct shareholders to look no further, and yet contend that third-party statements remedied its nondisclosure. Caiola does not suggest that it can.

D. **BOA's Proposed Expert Testimony On Stock Price Movement Is Irrelevant.**

BOA contends that the materiality of its misstatements and omissions in the proxy materials should be determined by a "showing [of what] the market understood." BOA's 12/23 Letter a 3. This position is erroneous and Professor Hubbard's analysis, which focuses on price movements in BOA's stock to purportedly show that the bonus agreement with Merrill was immaterial, should be precluded. In the proxy context, BOA's stock price movement is not

relevant since a shareholder could have been deceived by BOA's misleading proxy statement even if the misinformation would not have affected the stock price, which is determined only by the most sophisticated investors. See TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) (materiality in proxy context "does not require proof of a substantial likelihood that disclosure ... would have caused a reasonable investor to change his vote."); John M. Newman, Jr. et al., Basic Truths: The Implications of the Fraud-On-The-Market Theory for Evaluating the 'Misleading' and 'Materiality' Elements of Securities Fraud Claims, 20 J. Corp. L. 571, 585 (1995) (cited in the Commissions 12/23 Letter at 4). In a Section 10(b) case, a shareholder misled by misinformation that had no impact on the stock price may be unable to establish reliance or that he had suffered economic harm. But as BOA is aware, reliance is not an element in the Commission's case, and evidence concerning BOA's stock price movement is accordingly inapposite and prejudicial in this case.

Respectfully submitted,

Alexander Vasilescu
Scott Black
Joseph Boryshansky

Cc: Daniel J. Kramer, Esq.
Lewis J. Liman, Esq.
Alex Young K. Oh, Esq.
Shawn J. Chen, Esq.
Victor L. Hou, Esq.
Melissa K. Marler, Esq.
Audra J. Soloway, Esq.