PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
TELEPHONE (212) 373 3000

NEW YORK   NEW YORK 10019 6064
FACSIMILE (212) 757 3990

2001 K STREET NW
WASHINGTON DC 20006 1047
TELEPHONE (202) 223 7300
FACSIMILE (202) 223 7420

FUKOKU SEIMEI BUILDING
2 2 UCHISAIWAICHO 2 CHOME
CHIYODA KU  TOKYO 100 0011  JAPAN
TELEPHONE (813) 3597 8101
FACSIMILE (813) 3597 8120

WRITER S DIRECT DIAL NUMBER

(212) 373-3020

WRITER S DIRECT E MAIL ADDRESS

dkramer@paulweiss.com

WRITER S DIRECT FACSIMILE

(212) 492-0020

UNIT 3601  FORTUNE PLAZA OFFICE TOWER A
NO 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE S REPUBLIC OF CHINA
TELEPHONE (86 10) 5828 6300
FACSIMILE (86 10) 6530 9070/9080

12TH FLOOR  HONG KONG CLUB BUILDING
3A CHATER ROAD  CENTRAL
HONG KONG
TELEPHONE (852) 2846 0300
FACSIMILE (852) 2840 4300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU  U K
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

January 7, 2010

**By Facsimile**

Honorable Jed S. Rakoff
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*SEC v. Bank of America Corp.*, No. 09-Civ-6829 (JSR)

Dear Judge Rakoff:

We respectfully submit this letter on behalf of defendant Bank of America Corporation ("BOA"), in opposition to the SEC's December 31, 2009 letter, which seeks permission to file a Second Amended Complaint ("SAC"). From its inception, the SEC has proceeded in this action on the sole claim that BOA failed to disclose that Merrill employees would receive year-end incentive compensation in 2008. When the SEC had the opportunity to amend its Complaint before this Court's October 19 deadline – a right the SEC fully exercised – it chose not to add any allegations related to Merrill's 4Q08 losses. Now, just two months before trial, the SEC seeks a substantial expansion of the Amended Complaint to include the new, unrelated and legally novel charge that BOA was obligated to update its registration statement before the shareholder vote to disclose intra-quarter losses Merrill had sustained or was projected to sustain.

Leave to amend should be denied because: (1) the SEC has not acted diligently, as it has known the key facts relating to its new claim since at least February, but inexcusably waited until December 31 to make its motion; (2) the SEC's new claim has no legal basis and therefore would be futile; and (3) BOA would be severely prejudiced if the amendment were allowed at this late date, as fact discovery has closed, the date for submitting expert reports has passed, and trial is set to begin on March 1.

### I. The Standard The SEC Must Satisfy

The SEC uses the wrong standard in arguing that its motion is governed by the liberal test of Rule 15 of the Federal Rules of Civil Procedure. Where, as here, the deadline for amending the complaint as of right has expired, the applicable test is not the "freely given" standard of Rule 15(a), but the more stringent "good cause" standard under Rule 16(b). *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607 F. Supp. 2d 600, 602 (S.D.N.Y. 2009) (JSR). The SEC bears the burden of showing it has "good cause" to make a late amendment, and good cause "is measured by the moving party's diligence in attempting to meet the deadline set by the Court." *Id.*; *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Good cause is lacking where plaintiff had knowledge of the facts essential to its new claim prior to the deadline for amendments but failed timely to assert the claim. *Parker*, 204 F.3d at 340-41.

In addition, the SEC must satisfy the requirements of Rule 15(a). *Compania*, 607 F. Supp. 2d at 602-03. And, under Rule 15(a), leave to amend is properly denied when (1) there has been undue delay in seeking to amend; (2) the opposing party would suffer undue prejudice; (3) leave to amend

Honorable Jed S. Rakoff                                                                                         2

is sought in bad faith; or (4) amendment would be futile because the new allegation does not state a claim. *Burch* v. *Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

**II.     The SEC Cannot Show Good Cause For Its Late Amendment**

The SEC does not come close to carrying its burden of showing good cause for its delay.

***First***, as set forth in the accompanying Declaration of Victor L. Hou, Esq. (the "Hou Decl."), the SEC knew all the relevant facts it alleges to make out its claim well before it amended the Complaint in October:

(1) BOA's earnings release on January 16, 2009, informed the SEC and the rest of the investing public that Merrill had incurred 4Q net losses of approximately $15.31 billion but had not disclosed any of those losses during the quarter (Hou Decl. ¶ 3.);

(2) documents provided to the SEC in February 2009 showed (a) that BOA was aware before the shareholder meeting that Merrill had estimated $4.5 billion in net losses in October and approximately $4 billion in additional losses in November (SAC ¶ 2); (b) that on "November 12 . . . Merrill provided [BOA] with an internal report that forecasted a fourth quarter net loss of approximately $5.4 billion" (*id.* ¶ 27.); and (c) that on "December 3, … [BOA] received an updated report reflecting an estimated net loss of $6.4 billion at Merrill for October and November, and forecasting a quarterly net loss of over $7 billion" and that after receiving the forecast, BOA "add[ed] a $2 billion placeholder to the November results" (*id.* ¶ 30.);

(3) the SEC knew in May 2009 what Ken Lewis and John Thain had to say about the forecasted losses – because it interviewed both of them (Hou Decl. ¶¶ 8, 9.); and

(4) BOA's CFO, Joe Price, told the SEC on August 4, 2009, that BOA had sought advice of counsel on the question of disclosure of the 4Q losses. (*Id.* ¶ 12.)

Indeed, Merrill's 4Q losses had been the subject of extensive press and Congressional coverage and civil lawsuits for months before the SEC brought its first Complaint in this case. (*Id.* ¶ 13.) The SAC does contain one arguably new fact, the allegation that the advice of counsel followed by BOA was supposedly "erroneous." However, the SEC did not need to know the content of that advice to make its new claim; if anything, the facts regarding the lawyers' advice are exculpatory. In any event, the SEC learned the content of the advice well before the close of discovery. On October 16, 2009, BOA produced to the SEC the notes of its general counsel's advice on 4Q disclosure, revealing the advice and that BOA followed that advice. (*Id.* ¶ 19.)

The SEC's suggestion that it could not reach a "considered conclusion that the proposed new charge should be brought" until depositions were completed not only is incorrect, but also is irrelevant. It is incorrect because the SEC conducted an extensive investigation before filing its Complaint, where it received numerous documents and interviewed witnesses concerning the 4Q loss claim, including BOA's and Merrill's CEOs, CFOs, and other senior finance executives. (*Id.* ¶¶ 4-11.) It is irrelevant because the issue on this motion is not whether the SEC had every bit of discovery relevant to its new claim. The issue instead is whether, with reasonable diligence, the SEC could have brought its claim in a timely manner. *Compania*, 607 F. Supp. 2d at 602-03. Significantly, the SEC does not assert it was unable to bring its new claim before October 19. Nor could it since it possessed all of the relevant facts months before filing its Complaint in this action.

***Second***, despite having ten months to review the documents it now relies upon, it was not until December 22, 2009, that the SEC told BOA that it was contemplating amending the Complaint to assert a claim based upon 4Q losses. Although it was aware of the record of its administrative investigation, months of media coverage, the filing of dozens of civil actions concerning the alleged failure to disclose losses and Congressional hearings, the SEC did not mention adding a 4Q loss claim:

- on August 3, 2009, when it filed its Complaint.
- on October 19, 2009, when it filed its Amended Complaint.

- on October 22, 2009, when BOA objected to SEC questions regarding 4Q losses at the first deposition in this case. Instead, the SEC represented off the record that those questions were relevant to its claim for equitable relief. (Hou Decl. ¶ 22.)

- on October 29 or November 2, 2009, when discussing the proposed protective order in this case. As the Court may recall, the SEC requested, on behalf of the NYAG, that transcripts relating to the NYAG's separate investigation, which involved issues not alleged in the SEC case, be kept confidential. The Court heard the SEC's argument on October 29 and requested a further conference, which was held on November 2, with a representative of the NYAG present. During that conference, the NYAG's office stated that its investigation of BOA was broader than the SEC's case, as it included the alleged failure to disclose Merrill's intra-quarter losses and projected 4Q losses. In response, the SEC said nothing to the Court or BOA about expanding its Amended Complaint to include such a claim. Rather, the SEC stated only that 4Q losses were relevant to equitable relief it might seek on the compensation claim and to the materiality of the alleged failure to disclose the agreement regarding incentive compensation. (*Id.* ¶¶ 24-25.)

- or even on December 17, 2009, at the hearing regarding expert discovery, when this Court reminded the parties that the March 1 trial date was "fixed, set, unalterable, immovable and subject only to acts of God." (*Id.* ¶ 34.)

Through all of these events the SEC stood mute. It never gave any indication that it was considering a substantial expansion of this case until December 22, 2009, when the SEC staff notified BOA, for the first time, that it was considering adding a charge based upon the 4Q losses. Notably, this came only 11 days after members of the House Oversight and Government Reform Committee questioned the SEC, on December 11, 2009, as to whether the SEC intended to charge BOA with "fail[ing] to disclose accelerating losses at Merrill Lynch before the shareholder vote." (*Id.* at ¶ 27.) This sequence of events undermines the SEC's story regarding the timing of its new claim. The truth is that the SEC made an 11th-hour decision to amend the Complaint. Its decision to wait and seek to amend its Complaint at this late date is an improper tactical maneuver that should not be allowed. *See State Trading Corp. of India, Ltd.* v. *Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).[1]

### III. Amendment Would Be Futile[2]

The SEC's proposed claim is based on the novel theory that Item 10 of Form S-4 and Item 512 of Regulation S-K obligated BOA to update its registration statement to include Merrill's interim results. (SAC ¶¶ 2, 18, 50.) We are not aware of any case where the SEC has charged a violation of Rule 14a-9, under any theory, in connection with the failure of one public company to disclose the interim or projected losses of a separate and independent public company. And a plain reading of these regulations shows that the new theories the SEC seeks to advance in this case are baseless.

The first theory invoked by the SEC under Item 10 of Form S-4 requires the "registrant" to "[d]escribe any and all material changes in the *registrant's* affairs that have occurred since the end of the latest fiscal year . . . and that have not been described in a report on Form 10-Q . . . or Form 8-K . . . ." 17 C.F.R. § 239.25 (emphasis added). The SEC charges that this required BOA to describe "material changes in [Merrill's] affairs". (SAC ¶¶ 2, 18, 50.) One major problem with this argument is that BOA, not Merrill, was the "registrant" on the Form S-4. In other words, the obligations imposed under Item 10 did not pertain to the proxy statement sent by

---

[1] The Court should reject the argument that, despite this record, BOA should have guessed that the SEC eventually would bring a 4Q loss claim and should have been preparing its defense to that claim. The SEC also is wrong to suggest that its timing was dictated by "scheduling conflicts and witness availability." (SEC Ltr. 3-4.) The only witness knowledgeable about 4Q losses whose deposition was moved as a result of a scheduling conflict was Joe Price, and the date only moved from December 16 to December 18. (Hou Decl. ¶ 32.)

[2] BOA reserves the right to present additional arguments.

BOA to its own shareholders, but to the registration statement that BOA filed with respect to its offering of BOA stock to Merrill's shareholders. Item 10 thus imposed no duty on BOA to "describe any and all material changes" in Merrill's affairs.

But even if Item 10 were read to impose such a duty on BOA, it was fully satisfied here. Item 10 does not require disclosure of interim results; it instead requires the "registrant" to "describe" the material changes in its affairs since the end of the last fiscal year that have not been reported on a Form 10-Q or Form 8-K, including "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *See* Reg. S-K, 17 C.F.R. § 229.303(a)(3)(ii). On November 5 and 6, 2008, Merrill and BOA respectively issued their 3Q Forms 10-Q. These filings, which were incorporated by reference into the proxy statement, laid out in substantial detail the "material changes" in Merrill's business since the end of fiscal 2007, as well as the "known trends and uncertainties" expected to have a "material . . . unfavorable impact" on Merrill's "continuing operations" in 4Q08 and beyond. (Merrill 3Q08 10Q at 83.)

The second SEC theory relates to Item 512 of Regulation S-K, which requires the registration statement to include an undertaking stating that the registrant will file a post-effective amendment to reflect "any facts or events arising after the effective date of the registration statement [which] represent a fundamental change in the *information set forth in the registration statement.*" 17 C.F.R. § 229.512 (emphasis added). This obligation, too, relates to updating the registration statement with respect to the offering of BOA shares to Merrill shareholders; it has no bearing upon the proxy statement that BOA sent to its own shareholders. In addition, Merrill's actual and forecasted losses for October and November 2008 did not constitute a "fundamental change" under Item 512.[3] This was not a "change" from Merrill's recent performance, as Merrill had reported multi-billion dollar losses over each of the five quarters preceding 4Q08. This included a net loss of $10.3 billion in 4Q07 (which included a one-month loss of more than $7.5 billion in December 2007). (Hou Decl. ¶ 2.) And the losses were not "fundamental." As the SEC explains in the Adopting Release for Item 512, "many variations in matters such as operating results, properties, business, product development, backlog, management and litigation ordinarily would not be fundamental," whereas "major changes in the issuer's operations, such as significant acquisitions or dispositions, would [be]". Adoption of Integrated Disclosure System, 1982 WL 90370, at *29 (Mar. 3, 1982).

The SEC's current application of these regulations is so unhinged from their language, surprising and lacking in notice, that their enforcement would violate due process. *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) (SEC may not interpret its rules in a way that "would penalize an individual who has not received fair notice of a regulatory violation").

### IV. BOA Would Suffer Substantial Prejudice If The Amendment Is Allowed

The SEC's new 4Q loss claim involves facts, witnesses and legal theories that are substantially different from those underlying its "bonus" claim. By charging that there was a "fundamental change" in Merrill's affairs between the date of the proxy materials and the date of the shareholder vote, the SEC has put a focus on Merrill's financial condition before 4Q08, and on a comparison with its financial condition during the beginning of 4Q08, which is new to this case.

While the SEC states it does not need any discovery to proceed with its new claim (and should be held to that position) (SEC Ltr. 4), BOA is entitled to investigate the bases for its defenses.[4] The new charge raises significant and complex issues regarding, among other things, the

---

[3] Under Item 512, a "fundamental change" is more "major and substantial" than a "material change." *See* Delayed or Continuous Offering and Sale of Securities, Securities Act Release No. 6334, 1981 WL 30767, at *11-*12 (Aug. 6, 1981).

[4] As BOA was finalizing this letter, BOA's counsel received a call from the SEC advising BOA that the SEC intended to seek additional expert discovery if the Court granted its motion. Thus, it appears that the SEC will be seeking additional discovery in connection with its new claim.

nature of Merrill's actual and projected losses in October and November 2008, and in periods before 4Q08, and how the losses in the two periods compare to each other. It puts into play, among other things, issues regarding the finality of Merrill's October numbers and the reliability of Merrill's forecasting process. It will require an examination of the components of Merrill's losses, both in 4Q08 and in prior periods, and an understanding of the historical basis for the valuation of numerous assets on Merrill's balance sheet, including an analysis of the various methodologies for pricing Merrill's illiquid assets and the history of sizeable and significant month-to-month fluctuations in Merrill's asset valuations. It raises issues regarding whether Merrill's losses in October and November 2008 indicated something fundamental and new about Merrill's business, or whether it was the continuation of a trend that began in 2007 or before, and whether that trend affected Merrill in a significantly different manner from how it affected other investment banks. To date, there has not been a focused inquiry into any of these issues.[5]

We have not begun a search for all of the documents relevant to these issues and do not yet know the identity or availability of all of the witnesses who will be required for BOA to understand and litigate these issues. We do know that several former senior Merrill executives, who are likely to be central to these issues, are no longer with BOA, including Stanley O'Neal (former CEO), John Thain (former CEO), Jeff Edwards (CFO in 2007), Nelson Chai (CFO in 2008), Osman Semerci (Head of Fixed Income in 2007), Laurence Tosi (Finance Director in 2007) and Eric Heaton (Treasurer in 2008). In addition, the SEC's charge is legally novel. BOA will want a fair chance to analyze the legal issues and present its arguments clearly and forcefully in a motion to dismiss. Also, after the factual record is developed, it will want a fair chance to present a motion for summary judgment.

The SEC's late amendment should not deprive BOA of its right to have adequate time to analyze and test the sufficiency of the SEC's factual and legal theories, seek and review relevant documents, interview fact witnesses, engage expert witnesses, make motions and formulate its defenses. Even under an expedited schedule, this will take time and resources, and the prejudice to BOA by the SEC's late assertion of its claim is compounded by the fact that BOA is gearing up for a trial on the current Amended Complaint that is less than 60 days away – completing expert discovery, drafting motions *in limine*, writing opening statements, preparing witness testimony and engaging in other trial-related tasks.

Moreover, BOA is not required to accept at face value the SEC's pronouncement that it has produced all information relevant to its new claim. (SEC Ltr. 4-5.) The SEC cannot simply cut off BOA's discovery rights and should be subjected to full discovery on the factual and legal basis of its new claim. And, although the SEC has waived its right to present expert witnesses on its claim, BOA should not be forced to abandon its right to offer expert testimony. Specifically, the SEC's new claim raises several issues that may benefit from expert testimony, including analysis of entries in Merrill's financial statements, methods for valuing illiquid assets, industry practice regarding Item 512 undertakings and custom and practice for attorneys analyzing disclosure issues. Notably, the SEC has insisted on deposing any such experts. (SEC Ltr 5.)

There also would need to be third-party discovery. For example, the SEC's new claim refers to various unnamed "analysts" who reflected the "market's view" that Merrill's 4Q performance would be a "substantial improvement". (SAC ¶ 23.) The SEC should be required to identify those analysts so BOA may take discovery from these non-parties and ascertain, among other things, whether their estimates reflected a considered view of the market as of 4Q08.

In short, the SEC's late submission of its 4Q loss claim has created the untenable situation where either BOA will be unfairly limited in preparing its defense – in violation of its constitutional right to due process – or the Court will be forced to move its March 1 trial date. This is the classic definition of prejudice. *See Ruotolo* v. *City of New York*, 514 F.3d 184, 192

---

[5] Undoubtedly, other issues and complications will arise as BOA digs into the SEC's new claim.

Honorable Jed S. Rakoff 6

(2d Cir. 2008). The proper response to the SEC's dilatory conduct is to maintain the current schedule and deny the SEC's untimely and prejudicial motion to amend.

For all of these reasons, the SEC's motion for leave to amend should be denied.

Respectfully submitted,

*Daniel J. Kramer / MSP*

Daniel J. Kramer

Enclosure
cc: Alexander Vasilescu (via email)