UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

           v.                                      09 Civ. 6829 (JSR)

BANK OF AMERICA CORPORATION,

           Defendant.

------------------------------------------------------------------ X

## DECLARATION OF VICTOR L. HOU

Pursuant to 28 U.S.C. § 1746, Victor L. Hou declares as follows:

      1.      I am a member of the Bar of this Court and a member of the law firm of Cleary Gottlieb Steen & Hamilton LLP, attorneys in this action for defendant Bank of America Corporation ("BOA"). I submit this Declaration in support of BOA's letter brief in opposition to the SEC's December 31, 2009 letter brief seeking permission to file a Second Amended Complaint (the "SAC") in this action. The information in this Declaration is based on my own personal knowledge and on information and belief, including information conveyed to me by other attorneys for BOA acting in the course of their professional duties.

      2.      On January 17, 2008, Merrill Lynch issued an earnings release in which it announced a net loss from continuing operations of $10.3 billion for the fourth quarter of 2007. "Merrill Lynch Reports Full Year 2007 Net Loss From Continuing Operations of $8.6 Billion," Jan. 17, 2008, at 2. A true and correct copy of this document is attached hereto as Exhibit 1. Merrill Lynch suffered a one-month net loss from continuing operations of over $7.5 billion in December 2007.

3. On January 16, 2009, BOA issued a press release in which it announced, among other things, that Merrill Lynch had suffered a net loss of $15.31 billion for the fourth quarter of 2008. Bank of America Corp.. Current Report (Form 8-K), Exhibit 99.1 at 2 (Jan. 16, 2009). A true and correct copy of this document is attached hereto as Exhibit 2.

4. On February 27, 2009, BOA produced to the SEC the principal documents relating to Merrill Lynch's 2008 fourth quarter losses on which the SAC relies. These documents included, among others: (1) a November 12, 2008 Merrill Lynch forecast estimating a fourth quarter after-tax loss of approximately $5.4 billion, which included a net loss for the month of October of $4.5 billion (referenced at SAC ¶¶ 25, 27); (2) a December 3, 2008 forecast reflecting an estimated net loss of $6.4 billion for October and November and forecasting a quarterly net loss of over $7 billion (referenced at SAC ¶ 30); and (3) and a revision to that forecast later the same day to add a $2 billion "placeholder" to the November results on a pre-tax basis and $1 billion for anticipated losses in December (referenced at SAC ¶ 30).

5. On March 31, 2009. BOA produced numerous additional documents to the SEC, including a December 4, 2008 email on which the SAC relies informing BOA that approximately $800 million of the $2 billion November placeholder had been recorded in losses on Merrill Lynch's correlation book and increasing the estimated net losses in October and November 2008 to over $7.5 billion. That document is referenced at SAC ¶ 31, which alleges that this update "brought the estimated net loss in November to $3 billion." Thus, by early March 2009, BOA had produced to the SEC, among other documents, all of the documents regarding Merrill Lynch's 2008 fourth quarter losses that the SEC now relies upon in the proposed SAC.

2

6. Between March 2009 and August 2009, the SEC participated in numerous interviews of various BOA and Merrill Lynch executives. Merrill Lynch's 2008 fourth quarter losses and the forecasts that were produced to the SEC were the subject of extensive questioning during these interviews.

7. On March 30, 2009, I understand that the SEC participated in an interview of Nancy Meloth, Senior Executive for Forecasting and Planning at Merrill Lynch, at which she was questioned extensively about Merrill Lynch's 2008 fourth quarter losses and forecasts. Meloth's group prepared the financial forecasts, and Meloth transmitted the forecasts for the fourth quarter of 2008 to BOA.

8. On May 12, 2009, I understand that the SEC participated in an interview of John Thain, former CEO of Merrill Lynch, at which he was questioned extensively about Merrill Lynch's 2008 fourth quarter losses and forecasts. Thain was present at a meeting on December 3, 2008 where Merrill Lynch's fourth quarter forecasts were discussed and that is the subject of SAC ¶ 30 (the "December 3 Meeting").

9. On May 15, 2009, the SEC participated in an interview of Ken Lewis, BOA's former CEO, at which he was questioned extensively about Merrill Lynch's 2008 fourth quarter losses and forecasts. Lewis was present at the December 3 Meeting.

10. On June 24, 2009, I understand that the SEC participated in an interview of Neil Cotty, Senior Finance Executive at BOA, at which he was questioned extensively about Merrill Lynch's 2008 fourth quarter losses and forecasts. Cotty received the Merrill Lynch forecasts from Meloth and was present at the December 3 Meeting.

11. On August 3, 2009, I understand that the SEC participated in an interview of Nelson Chai, Merrill Lynch's former CFO, at which he was questioned extensively about Merrill

Lynch's 2008 fourth quarter losses and forecasts. Chai received and reviewed the Merrill Lynch financial forecasts.

12. On August 4, 2009, the SEC participated in an interview of Joe Price, BOA's CFO, at which he was questioned extensively about Merrill Lynch's 2008 fourth quarter losses and forecasts. Price testified that he sought advice of counsel on the questions of disclosure of the 2008 fourth quarter losses. Price was involved in discussions regarding whether Merrill Lynch's 2008 fourth quarter losses needed to be disclosed and was present at the December 3 Meeting. Thus, by August 4, 2009, the SEC had participated in the interviews of every person present for the December 3 Meeting.

13. Merrill Lynch's 2008 fourth quarter losses had been the subject of extensive press and Congressional coverage and civil lawsuits for months before the SEC brought its first Complaint in this case. True and correct copies of certain of these press reports are attached hereto:

- Exhibit 3: Posting of Dan Slater to WSJ Law Blog, http://blogs.wsj.com/law/ (Jan. 22, 2009, 13:31 EST) (discussing class action lawsuit regarding Merrill Lynch's 2008 fourth quarter losses).

- Exhibit 4: Susanne Craig, *Merrill Bonus Case Widens As Deal Struggles*, WALL ST. J., Jan. 29, 2009, at C1 (reporting that NYAG was expected to expand the scope of its investigation to include Merrill Lynch's 2008 fourth quarter losses).

- Exhibit 5: Louise Story, *Cuomo Has More Questions on Merrill Bonus*, N. Y. TIMES, Feb. 24, 2009, at B4 (reporting that NYAG was expected to expand the scope of its investigation to include Merrill Lynch's 2008 fourth quarter losses).

- Exhibit 6: *Pension Funds to Lead Suit Against Bank*, N.Y. TIMES, July 2, 2009, at B4 (discussing Congressional investigation and shareholder lawsuits regarding fourth quarter losses).

14. By September 14, 2009, the SEC also received the transcripts of the following depositions conducted by the Office of the New York Attorney General, which asked extensive questions regarding Merrill Lynch's 2008 fourth quarter losses and forecasts: (1) February 19

and 24, 2009 interviews of John Thain, (2) February 26, 2009 interview of Ken Lewis; (3) March 16, 2009 interview of Joe Price; and (4) April 10, 2009 interview of Greg Curl, Vice Chairman of Corporate Development for Bank of America. The SEC represented on November 2 that it had ceased receiving copies of transcripts from the New York Attorney General after the Court rejected the proposed settlement in this case.

15. On September 21, 2009, this Court entered its Case Management Order, which, among other things, set the deadline for filing amended pleadings without leave of Court at October 19, 2009.

16. On September 28, 2009, the SEC served ten interrogatories on BOA. None of these interrogatories related to Merrill Lynch's 2008 fourth quarter losses.

17. On September 28, 2009, the SEC served its First Set of Document Requests on BOA. None of these 22 requests related to Merrill Lynch's 2008 fourth quarter losses.

18. On October 14, 2009, the Court signed a Disclosure Stipulation and Protective Order pursuant to Federal Rule of Evidence 502 ("Rule 502"). Under this Order, pursuant to Rule 502, Bank of America agreed to produce certain materials protected from disclosure under the attorney-client privilege and the work product doctrine with respect to certain subject matters, including the 2008 fourth quarter losses and forecasts.

19. By October 2009, BOA had produced to the SEC the principal privileged documents regarding the 2008 fourth quarter losses, including the notes of counsel regarding the advice provided from November 12 to November 20 and on December 3, 2008 (referenced at SAC ¶¶ 29, 30). Bank of America produced the notes of its general counsel to the SEC on October 16, 2009, before the SEC amended its Complaint. These notes indicated that BOA

5

management had sought the advice of counsel regarding disclosure of Merrill Lynch's 2008 fourth quarter losses and that counsel had advised that no further disclosure was necessary.

20. On October 16, 2009, the SEC served its Second Set of Document Requests, which contained three requests relating to Merrill Lynch's 2008 fourth quarter losses. None of the requests pertained to losses prior to the fourth quarter of 2008.

21. On October 19, 2009, this Court's deadline expired for the parties to file amended pleadings without leave of Court. On October 19, the SEC filed an amended complaint, asserting an additional claim under Rule 14a-3 for the original allegations concerning Merrill Lynch's incentive compensation. The amended complaint contained no allegations regarding Merrill's 2008 fourth quarter losses.

22. On October 22, the SEC took the deposition of Greg Fleming, the former President of Merrill Lynch. At that deposition, the SEC asked questions regarding the 2008 fourth quarter losses, and BOA objected to those questions. The SEC represented off the record that it believed that the 2008 fourth quarter losses were relevant to its claim for injunctive relief. The SEC did not indicate that it contemplated amending its complaint to add a separate claim regarding the 2008 fourth quarter losses.

23. On October 29, 2009, I understand that the SEC participated in an interview of BOA's former General Counsel, Timothy Mayopoulos, at which he was questioned extensively about Merrill Lynch's 2008 fourth quarter losses and forecasts and the related legal advice from counsel. Counsel for BOA was not permitted by the SEC to attend the interview.

24. On October 29, 2009, the parties held a call with the Court regarding the proposed protective order. The SEC requested, on behalf of the New York Attorney General, that certain transcripts of witness interviews before the New York Attorney General that were in

the SEC's possession be treated as confidential because those transcripts related to a separate investigation by the New York Attorney General regarding issues that were not alleged in the SEC's case.

25. On the October 29, 2009 call, the Court requested a further telephone conference. This telephone conference was held on November 2, 2009, and a representative of the New York Attorney General was present. The representative of the New York Attorney General stated that its investigation of BOA was broader than the SEC's investigation, because, in addition to the incentive compensation issue, its investigation also included the alleged failure to disclose Merrill Lynch's projected 2008 fourth quarter losses. The SEC did not suggest on the call that it contemplated amending its complaint to add a claim based on the 2008 fourth quarter losses. Instead, it represented to the Court and to BOA that it believed the 2008 fourth quarter losses were relevant to its claim for injunctive relief and to the materiality of the alleged failure to disclose the agreement regarding incentive compensation. Following the SEC's representations, the Court entered the protective order limiting the disclosure of the New York Attorney General transcripts on November 5, 2009. Those representations bridged the taking of the first three depositions in this case (Fleming (October 22), Lewis (October 31), and Thain (November 5)).

26. On December 2, 2009, the SEC served its Third Set of Document Requests, which contained two requests, neither of which related to Merrill Lynch's 2008 fourth quarter losses.

27. On December 11, 2009, Robert Khuzami, Director of the SEC's Division of Enforcement, testified before the House Oversight and Government Reform Committee

regarding the SEC's investigation of this matter. The transcript of that testimony is attached hereto as Exhibit 7.

28.   The SEC took 13 depositions from November 6 to December 11, 2009. Of those witnesses, four were relevant only to compensation (Andrea Smith, Peter Stingi, Steele Alphin, and John Finnegan). Eight of those witnesses were lawyers (Nicholas Demmo, Ed Herlihy, Jeannemarie O'Brien, Tim Mayopoulos, Teresa Brenner, Rosemary Berkery, John Marzulli, and Jeff Crandall), and of those only four had any relationship to the legal advice regarding Merrill Lynch's 2008 fourth quarter losses (Demmo, Herlihy, Mayopoulos, and Brenner). Demmo was deposed on November 16, Herlihy on November 17, Mayopoulos on December 1, and Brenner on December 4 (as mentioned above, I understand that the SEC also participated in an interview of Mayopoulos on October 29). They testified that BOA followed their advice with respect to the 2008 fourth quarter losses. During that testimony, the SEC never suggested that its representations had changed with respect to the relevance of the 2008 fourth quarter losses to this case or whether it was considering adding a charge with respect to the 2008 fourth quarter losses. Nor did it correct its representation to this Court.

29.   On December 11 -- the same date as Mr. Khuzami appeared before Congress -- the SEC took the deposition of Greg Curl, who was aware of some of the 2008 fourth quarter losses but whose testimony was relevant primarily as the negotiator on the BOA side of the BOA-Merrill Lynch transaction. Mr. Curl testified that he was not involved in the decision whether or not to disclose Merrill Lynch's actual or projected losses.

30.   Between December 12 and December 23, 2009, the SEC took eight additional depositions. Of these eight, two were BOA directors (Thomas May and Chad Gifford), and three were lawyers who had nothing to do with advice regarding disclosure of the fourth quarter losses

(Patricia Kuhn, Jonathan Santelli, and Jana Litsey). The remaining three witnesses were Joe Price, Neil Cotty, and Chris Hayward. The SEC previously had interviewed Messrs. Price and Cotty. In addition, as discussed below in paragraph 31, their depositions were not requested until very late in the deposition period.

31. The SEC suggested on October 21, 2009 that it might request the depositions of three members of BOA's finance department: Joe Price, Neil Cotty, and Gary Carlin. However, it did not follow up on any of these requests until weeks later. The SEC did not serve a notice of deposition for Joe Price until December 3, 2009 (attached hereto as Exhibit 8). The SEC did not request the deposition of Neil Cotty until December 15, 2009. It never requested Mr. Carlin's deposition. Chris Hayward is the only finance witness relevant to 2008 fourth quarter losses who the SEC had not interviewed prior to August 4, and the SEC did not request his deposition until December 17, 2009.

32. The only witness knowledgeable about the 2008 fourth quarter losses whose deposition date changed as the result of a scheduling conflict was Joe Price. His deposition was moved two days, from December 16 to December 18. Neil Cotty, whose deposition the SEC requested on December 15, was deposed on Price's original date of December 16.

33. The SEC never requested the depositions of any other witnesses with personal knowledge of Merrill Lynch's financial condition from 2007 through 2008 (other than the few whose depositions it took related to the 2008 fourth quarter losses), including Nelson Chai, Allan Sekler (Merrill Lynch's FICC CFO), Stanley O'Neal (Merrill Lynch's former CEO), Eric Heaton (Merrill Lynch's former Treasurer), Osman Semerci (former head of fixed income at Merrill Lynch), Jeff Edwards (Merrill Lynch's CFO in 2007), Laurence Tosi (former COO of Global Marketing and Investment Banking at Merrill Lynch). The SEC also did not ask any questions

9

regarding undertakings under Item 512 of Regulation S-K or whether the losses in the fourth quarter of 2008 represented a "fundamental change."

34.    On December 17, 2009, the parties appeared before the Court for a hearing regarding expert witnesses. At that hearing, the Court reminded the parties that the March 1 trial date was not subject to change. The SEC made no comment at that hearing that it was contemplating seeking to file a second amended complaint to add a new claim based on the 2008 fourth quarter losses. The transcript of that hearing is attached hereto as Exhibit 9.

35.    Not until the evening of December 22, 2009 did the SEC indicate for the first time, in a call with BOA's counsel, that it was contemplating amending its complaint to assert a claim based on the 2008 fourth quarter losses.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of January, 2010.

_____
Victor L. Hou