CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS
LONDON • MOSCOW • FRANKFURT • COLOGNE
ROME • MILAN • HONG KONG • BEIJING

Writer's Direct Dial (212) 225-2550
E-Mail: lhman@cgsh.com

February 16, 2010

BY HAND

The Honorable Jed. S. Rakoff
United States District Court for the
 Southern District of New York
United States Courthouse
500 Pearl Street, Room 1340
New York, NY 10007-1312

Re: SEC v. Bank of America Corp., Nos. 09 Civ. 6829, 10 Civ. 0215 (JSR)

Dear Judge Rakoff:

On behalf of Defendant Bank of America Corporation ("BAC" or the "Bank"), we respectfully submit this response to the Court's order dated February 11, 2010 (the "February 11 Order") and in further support of the Securities and Exchange Commission's ("SEC") Motion for Entry of the Proposed Consent Judgment.

I. The Evidentiary Record

In its February 11 Order, the Court directed the parties to provide additional materials from the evidentiary record regarding four particular issues.[1] In an effort to avoid duplicative

---

[1] The February 11 Order noted that, during the February 8 hearing, this Court "voiced a number of questions and concerns, arising, for example, from the very different interpretations of the underlying facts proposed by, respectively, the parties in this case and the Attorney General of the State of New York." See Feb. 11 Order at 1; see also Feb. 8, 2010 Tr. of Court Hearing at 6-7. The Order further directed the parties to submit the above-mentioned materials "[i]n order to adequately address those questions and concerns." Feb. 11 Order at 1-2. The Bank respectfully objects to any consideration being given to allegations made in other proceedings, including those contained in the New York Attorney General's complaint, or to any other extrajudicial materials. See United States

The Honorable Jed S. Rakoff
Page 2

submissions, we have conferred with the SEC and have jointly compiled the materials set forth in the Supplemental Appendix being provided to the Court.

II.     The Proposed Changes to the Consent Judgment

The Bank respectfully submits that this Court should enter the proposed Consent Judgment as submitted by the parties and that no changes are necessary. The proposed settlement was the result of arms-length negotiations between the parties and reflects the SEC's considered determination – entitled to substantial deference – that the proposed terms are fair, reasonable, and in the public interest.[2]

That said, the Bank has given careful consideration to each of the suggested changes set forth in the Court's February 11 Order and would not object to entry of an amended Consent Judgment to reflect (1) that the independent auditor engaged to assess BAC's disclosure controls and procedures be acceptable to both parties or, in the event of disagreement, chosen by the Court, and (2) that the person retained as disclosure counsel by BAC's Audit Committee be acceptable to both parties or, in the event of disagreement, chosen by the Court. In both of these instances, as the Bank understands it, the SEC would be playing a role within its institutional expertise – in one instance, assessing the acceptability of an independent auditor and, in the other, assessing the independence and expertise in disclosure issues of counsel retained by the Audit Committee. The Bank also would not object to amending the Consent Judgment to articulate the proposed principles of the anticipated Fair Fund distribution, as described in the Court's February 11 Order.

With respect to the remaining suggestion raised in the February 11 Order (identified as the third proposed provision), the Bank respectfully does not agree and would object to the SEC and the Court participating in the selection of the independent compensation consultant retained by the Compensation Committee of the Board of Directors. The proposed Consent Judgment, as presented by the parties, is appropriately tailored to address the alleged disclosure violations set forth in the SEC's complaints.[3] The proposed settlement ensures that compensation decisions will be made by an independent Compensation Committee that meets higher independence standards than those already mandated by stock exchange rules. See Proposed Final Consent Judgment at 4-5. It also requires that the Committee be advised by a compensation consultant who is similarly independent, while leaving it to the directors on the Committee to select the consultant who they believe will best assist them in discharging their fiduciary duties under Delaware law to Bank of America's shareholders. Id. at 5.

---

v. Microsoft Corp., 56 F.3d 1448, 1463 (D.C. Cir. 1995). The Bank also objects to any inquiry into or evaluation of claims or allegations that the SEC has decided not to assert in these cases. Id. at 1459-60.

[2] See Microsoft, 56 F.3d at 1460; SEC v. Bear Stearns & Co., No. 03 Civ. 2937 (WHP), 2003 WL 22466156, at *3 (S.D.N.Y. Oct. 31, 2003); see also Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986).

[3] Neither of the SEC's complaints raises any allegations about the propriety of substantive compensation decisions, much less decisions made by Bank of America's Compensation Committee, which was not involved in any of the events at issue. Regardless, such matters are solely the purview of state corporate and fiduciary duty laws, not the federal securities laws. See Milliken v. Bradley, 433 U.S. 267, 282 (1977).

   The SEC has consistently stated that it does not seek to enforce any particular compensation philosophy or impose any substantive judgments on the form or amount of compensation.[4] Accordingly, we do not believe that the third proposed change to the Consent Judgment is necessary to achieve or tailored to the remedial objectives of the settlement, and we further believe that this proposed change would impose on the SEC a substantive role that the SEC expressly does not seek and that is outside the province of the SEC and the Court.[5]

   Accordingly, we respectfully request that this Court enter the proposed Consent Judgment, either as originally presented or with the amendments agreed upon by both parties.

              Respectfully submitted,

              Lewis J. Liman

cc: George Canellos, Esq.
   Brad Karp, Esq.

---

[4] See Mary Schapiro, Chairman, U.S. Securities and Exchange Comm'n, Statement at SEC Open Meeting (June 10, 2009) ("At the SEC, our role has not been to set pay scales or cap compensation. Our role is to protect investors by ensuring that they have the information needed to make sound investment decisions, whether those decisions impact proxy voting or a decision to buy or sell a stock."); Kathleen L. Casey, Commissioner, U.S. Securities and Exchange Comm'n, Statement at SEC Open Meeting (July 1, 2009) ("we have been careful not to cross the line from requiring disclosure to making substantive judgments about companies' [compensation] policies and practices"); John W. White, Director, Division of Corporation Finance, U.S. Securities and Exchange Comm'n, Keynote Address at the ABA Section of Business Law Fall Meeting (Nov. 21, 2008) ("we have no role in establishing the substantive requirements relating to executive compensation (including the form and amount of executive compensation)").

[5] This does not mean that there will be no regulatory oversight of substantive compensation-related decisions at Bank of America (or other financial institutions). The Bank's compensation practices are already under close scrutiny by global banking regulators as a result of developing regulatory initiatives. In the U.S., the Federal Reserve published this past October its "Proposed Guidance on Sound Incentive Compensation Policies," which includes three key principles regarding the design and governance of compensation programs to promote the safety and soundness of the banking industry. In accordance with the Proposed Guidance, the Bank (and other financial institutions) has been subject to a comprehensive "horizontal review" of its compensation practices by the Federal Reserve, which is ongoing. In the U.K., the Financial Services Authority ("FSA") recently updated its regulatory code to include a new requirement that compensation practices must be consistent with effective risk management and adopted eight "evidentiary principles" regarding the design and governance of compensation programs to support this new requirement. Under this updated code, the Bank was required to submit a written "remuneration policy" to the FSA, and the Bank continues to work with the FSA on these issues.